**BROOKS v. CHICAGO, R. I. & P. R. CO.**

No. 13964.

United States Court of Appeals
Eighth Circuit.

Nov. 10, 1949.

W. Lawrence Oliver, Des Moines, Iowa (Virgil F. Dixon and Luther T. Glanton, Jr., Des Moines, Iowa, on the brief), for appellant.

Bruce Dwinell, Chicago, Ill., (Ralph L. Read and Alden B. Howland, Des Moines, Iowa, were with him on the brief), for appellee.

Before WOODROUGH, THOMAS and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

When this action was brought by Alonzo W. Brooks in the District court, a division of the National Railroad Adjustment Board and System Federation No. 6 Railway Employees Department of A. F. L., Mechanical Section thereof, were joined with the Chicago, Rock Island & Pacific Railroad Company as defendants, but valid service was not had upon the Board or the labor union and the action was tried against the railroad alone. There was a judgment on the merits in favor of the railroad and against the plaintiff dismissing the action and plaintiff appeals.

He alleged in his petition that he was in the employment of the railroad as a boilermaker for approximately 25 years and that the railroad had first suspended him and then after an investigation by it upon charges against him had dismissed him from his employment as of September 21, 1946, and that his discharge was unjust and unlawful because he was not accorded a fair hearing or representation by counsel of his own choice at the investigation. That he is a Negro and as such without privilege or right to be a member of the labor union to which the white members of his craft belong. He complained that the only representation he was allowed to have at the investigation was by a member of the union. He also alleged that he was and at all times since his suspension and discharge had been ready, willing and able to return to service with the railroad "with full seniority rights and all back pay for time lost since his

suspension" and prayed as to the railroad that "the court issue an order commanding the [railroad] to reinstate the plaintiff with full rights and seniority and all back pay for time lost since his suspension at the rate of $300.00 per month". By amendment to the petition made on the day of the trial he alleged that the denial of his right to be represented by counsel of his own choosing at the investigation was a violation of the National Railway Labor Act, 45 U.S.C.A. §§ 151 et seq., 152, par. 3, and was an unconstitutional denial of due process of law, and that forcing him to be represented at the investigation by a union representative when he could not be a member of the union was an unconstitutional denial of due process of law.

In its answer to plaintiff's petition the railroad preserved the defense that the petition stated no facts upon which plaintiff was entitled to any relief. It admitted that the plaintiff had been employed by its predecessor and by it intermittently and that while so employed by defendant plaintiff was first suspended and then discharged from his employment. It alleged that before it discharged the plaintiff an investigation and hearing were held at which plaintiff was represented by an officer of the appropriate labor union, as required by the terms of an agreement in effect between the trustees of the estate of the railroad and System Federation No. 6 Railway Employees Department, A. F. L., Meanical Section thereof, which governed the wages and conditions of employment applicable to plaintiff. At the conclusion of the investigation the Acting Master Mechanic of the railroad who conducted the same decided and announced that plaintiff was dismissed from defendant's service and he has not been returned. The railroad alleged that although plaintiff had asserted his willingness to return to work for defendant he has always demanded as a condition that he be paid wages for the time he has been out of service. It prayed dismissal of the action.

As the relief demanded against the railroad in the petition was of equitable nature, the case was tried before the court without a jury and the court received substantially all testimony offered by plaintiff, "trying", as the court stated on the trial, "to determine on argument whether or not you have any case here." It properly endeavored to ascertain all the facts and to determine whether plaintiff was entitled to relief either as prayed or otherwise, against the railroad. It considered all of the testimony offered before the Acting Master Mechanic in the investigation of the charges against the plaintiff and also the plaintiff's version of the conduct on his part which had occasioned the charges and investigation as well as testimony adduced by defendant pertinent to the issues, and at the conclusion of the trial filed a written opinion together with findings of fact and conclusions of law adverse to plaintiff and entered the judgment of dismissal accordingly.

It appeared to the court, as stated in its opinion, that: "The incident that brought about the suspension of the plaintiff and this controversy was either an assault or a fight between the plaintiff and a fellow employee, Tony Salazar, on the night of September 16, 1946. There had been an argument or quarrel between them on Wednesday or Thursday night previous to this conflict in the washroom at the Roundhouse of the railroad company where the two men were employed. On the way home from work and while waiting for a change in street cars, either Tony Salazar assaulted the plaintiff, or Tony Salazar was assaulted by the plaintiff. In either event, the employee Tony Salazar was seriously injured and was laid up in the hospital for some three weeks.

"On September 20, 1946, Mr. Passwater, acting master mechanic, was presented with a petition, Defendant's Exhibit B, asking that the plaintiff be removed from service.

"Acting on direction from Mr. Mallery, manager of personnel in Chicago, who is designated by the railroad to handle disputes between employees and the Company, plaintiff was suspended subject to a hearing as provided by the agreement between the Railroad Company and the Me-

chanical Section of the American Federation of Labor.[1]

"The plaintiff was given due notice of this hearing, which was set for September 25, 1946, and later continued to September 27, 1946, to be held in the Master Mechanic's office on the property of the Rock Island Railroad Company.

"Plaintiff appeared at the time and place set for the hearing with his attorney, Mr. W. Lawrence Oliver, but before the investigation got under way he was advised that according to the rules he must have a man represent him from the craft and Mr. Thompson, secretary of System Federation No. 6 and general chairman of the Boilermakers Union Craft, stated that he was there to represent Mr. Brooks.[2] Mr. Brooks was then asked if he wanted Mr. Thompson to represent him and the plain-

1. Relevant provisions of the agreement are:

"Rule 31. Grievances.

"Should any employee subject to this agreement believe he has been unjustly dealt with, or any of the provisions of this agreement have been violated, the case shall be submitted in writing to the foreman, general foreman, master mechanic or shop superintendent, each in their respective order, by the duly authorized local committee of their representatives, within ten (10) days. If stenographic report of investigation is taken the committee shall be furnished a copy. If the result still be unsatisfactory, the duly authorized general committee, or their representatives, shall have the right of appeal, in writing, with the higher officials designated to handle such matters in their respective order and conference will be granted within ten (10) days of application.

"All conferences between local officials and local committees to be held during regular working hours without loss of time to committeemen, and a written record of such conference shall be made.

"Should the highest designated railroad official or his duly authorized representative, and the duly authorized representative of the employees, as provided in this rule, fail to agree, the case shall then be handled in accordance with the Railway Labor Act.

"Money claimed due in cases described in first paragraph of this rule shall not be paid retroactively in excess of ten (10) days prior to the date of first presentation of said claim to the management.

"Grievances not involving money payments resulting from the cases described in the first paragraph of this rule shall be presented to the management not later than ten (10) days from last date of cause of complaint; otherwise all redress thereunder will be waived by all parties, including the person or persons involved and the organization.

"Rule 32. Pending Decision—Grievances.

"Prior to assertion of grievances as herein provided, and while questions of grievances are pending, there will neither be a shutdown by the employer nor suspension of work by the employees.

"Rule 33. Suspension of Work.

"No employee shall be disciplined without a fair hearing by designated officer of the carrier. Suspension in proper cases pending a hearing, which shall be prompt, shall not be deemed a violation of this rule. At a reasonable time prior to the hearing, such employee and his duly authorized representative will be apprised of the precise charge and given reasonable opportunity to secure the presence of necessary witnesses. If it is found that an employee has been unjustly suspended or dismissed from service, such employee shall be reinstated with his seniority rights unimpaired, and compensated for the wage loss, if any, resulting from said suspension or dismissal.

"Rule 34. Investigation before Dismissal.

"An employee who has been in the service of the Railway thirty (30) days shall not be dismissed for incompetency or be discharged for any cause without first being given an investigation."

2. Mr. Thompson stated:

"I happen to be the Secretary of System Federation No. 6, and General Chairman of Boilermaker's Craft, the craft in which Mr. Brooks is employed, and I desire to take exception to what has allegedly been told Mr. Brooks by someone in Chicago in connection with his rights to hire anyone he saw fit to represent him under the shop crafts' agreement and also the interpretation of the Railway Labor Act as handed down by the Attorney General of the United States in the year 1942. The Attorney General ruled upon request of the Railway Board of Mediation that the language of the grievance rule as contained in the Rock Island's Crafts Agreement precluded management from recognizing any representative of an employee other than those designated by our grievance rule which provides that the duly authorized and elected representa-

tiff replied that he had no objection to Mr. Thompson representing him. Mr. W. Lawrence Oliver, his personal attorney, was told that he could stay and be present at the hearing if he so desired, but was not to take any part in the proceedings, and Mr. Oliver did so stay at the meeting.

"Also at this trial the plaintiff stated that he agreed that Mr. Thompson should represent him at the investigation.

"The proceedings at this investigation on September 27, 1946, were taken down by a shorthand reporter and have been transcribed and the transcript of the hearing is offered as evidence in this case.

"And transcription of the hearing was sent to Mr. Mallery in Chicago, and, acting upon the contents thereof, he either issued an order suspending Mr. Brooks, or approved the suspension that had been made by Mr. Passwater.

"The evidence before the court at this trial is similar to that which transpired at the proceedings had before the examiner on September 27, 1946, except that on this hearing in court Mr. Tony Salazar testified, claiming the assault was made against him by Mr. Brooks, and at this hearing the plaintiff admits having heretofore been convicted of a felony.

"The proceedings leading up to the discharge of the plaintiff were in conformity with the agreement governing such matters between the Union and the Railroad Company and governing conditions of employment of the Craft to which the plaintiff belonged.

"Running through the case is a feeling by the plaintiff that he was imposed upon on account of his being of the Negro race, and I examined the evidence very carefully in this particular, but find nothing therein to justify any such feeling. Nor do I think there is any evidence from which an inference can be drawn to justify any such feeling or that any official was actuated by any such motive.

"The complaint of the plaintiff that he was deprived of a right of counsel at the hearing might have some merit were it not for the fact that he agreed that Mr. Thompson should represent him. He had his own lawyer at his side and nothing was placed in the record that indicated that he was taken advantage of in any way or in any manner, by reason of his failure to have the counsel of his first choice or a lawyer to represent him rather than the representative of the labor union. In the face of the fact that Mr. Brooks said at the hearing that he was satisfied that Mr. Thompson represent him, and in the absence of any evidence or inference in the record that he lost any rights by reason of that representation, I can see no reason to disturb the findings of the officials on the ground that the plaintiff was deprived of a right to have counsel."

The court's findings and conclusions were:

"1. That on the night of September 16, 1946, there was an assault or a fight in which the plaintiff and a fellow employee, Tony Salazar, participated, resulting from a quarrel between the parties which had its origin a few days before in the company's roundhouse in East Des Moines, Iowa, where the parties were employed.

"2. That in said fight the plaintiff either assaulted his fellow employee, Tony Salazar, or, if he was assaulted by the latter, he used more force than was reasonably necessary to repel any assault upon him.

"3. That thereafter and on September 20, 1946, Mr. F. E. Passwater, acting master mechanic, was presented with a peti-

---

tive as chosen by that particular craft or class must be recognized for the purpose of representation regardless of membership or non-membership in the organization holding that contract. And for that reason as the duly authorized and elected representative of the craft in which Mr. Brooks is employed, and Secretary Treasurer of Federation of all shop crafts, I am here present today for the purpose of furnishing him the representation to which he is entitled if he desires that representation from me. That is all I have to say at the present time.

"Q. Mr. Brooks, do you want Mr. Thompson to represent you? A. I have no objection to Mr. Thompson representing me."

tion signed by 'The Federated Committee' and accompanying it was another petition signed by 126 men working in the East Des Moines Roundhouse. These petitions in substance stated: that Alonzo Brooks is unsafe to work with, on account of actions toward his fellow workmen, causing bodily injuries and threats to commit bodily injuries is a common occurrence, and asked for his discharge.

"4. Acting upon advices or at the direction of Mr. Guy E. Mallery, manager of personnel and designated by the Railroad Company to handle disputes between employees and the Company, this plaintiff was suspended as an employee of the company and he was duly notified, in conformity with the agreement between the Union and the Railroad Company governing conditions of employment of the craft to which the plaintiff belonged; that a hearing would be had before Mr. F. E. Passwater, at his office on September 25, 1946, on charges of general 'conduct unbecoming an employee and in violation of rules 701 and 702 of the Carriers' Operating Rules, in that you have again indicated by your actions, inability to comply therewith as demonstrated by altercation on September 16, 1946, at 12:30 a. m. with employee Tony Salazar.'[3]

"5. That plaintiff appeared at said time and place and with his consent was represented at the hearing by Mr. H. O. Thompson, an officer of System Federation No. 6, Railway Employees' Department of A. F. of L., Mechanical Section, thereof.

"6. That in the investigation referred to the investigator found and determined that plaintiff had violated Rules 701 and 702 of the rules governing the conduct of employees of the railroad company, and the plaintiff was removed as an employee of the railroad company.

"7. That the proceedings held by Mr. Passwater were in all respects fair and in keeping with the rules and regulations of the agreement as to the conduct of employees of the company above referred to.

"8. That plaintiff was not restrained from offering any evidence that he had bearing upon the questions before the examiner.

"9. That the plaintiff was denied the right to be represented by an attorney of law, but he was represented at the proceedings by a labor representative and this met with his approval at the time.

"10. That Mr. Passwater, who conducted the proceedings, did not use his office to coerce employees of the company to sign a petition or petitions against the plaintiff and he did not make any derogatory remarks about the plaintiff, and there is no evidence to support any of the charges with reference to any misconduct on the part of Mr. Passwater.

"11. That plaintiff has exhausted all his remedies and has not been deprived of any rights with reference to the hearings or proceedings, or any rights of appeal, required by the rules of the company or its agreement with the union and there was no discrimination against the plaintiff in any of the proceedings by reason of the fact that the plaintiff was a member of the Negro race.

"12. That plaintiff was not wrongfully discharged from the service of the Railroad Company."

"Conclusions of Law.

"I find

"1. That the suspension and dismissal of Alonzo Brooks from the employ of the Railroad Company was fully justified and proper under the facts and the rules and

3. "701. Civil, mannerly deportment is required of all employees in their dealing with the public, their subordinates and each other. Boisterous, profane, or vulgar language is forbidden. Courtesy and attention to patrons is demanded. Employees must not enter into altercation with any person, no matter what provocation may be given, but will make note of the facts and report to their immediate superiors.

"702. Employees who are insubordinate, dishonest, immoral, quarrelsome or otherwise vicious, or who do not conduct themselves in such a manner and handle their personal obligations in such a way, that their railroad will not be subjected to criticism and loss of good will, will not be retained in the service."

proceedings had by the officials of the Railroad Company.

"2. That no legal rights of the plaintiff under the contract between the Railroad Company and its employees or under the Railway Labor Act were violated by the suspension and dismissal of plaintiff from the company.

"3. That plaintiff has failed to establish by a preponderance of the evidence that he is entitled to any relief and plaintiff's petition should be dismissed upon its merits."

The appellant contends here as he did before the trial court that (1) the railroad had no right to make rules as to its employees which apply off the company's property; (2) that the investigation was "merely a farce" in that the result had been pre-determined by the railroad officers; (3) and that the denial to plaintiff of the right to be represented at the investigation by counsel of his own choice was a violation of the Railway Labor Act.

■ (1) Appellant strongly urges that defendant has no authority to make rules which apply off the defendant's property, and if they do, the 13th Amendment to the Federal Constitution is null and void. The short answer to this contention is that the defendant's authority to apply its rules to employees while off the company property is not in issue here. Concededly, the altercation in question between appellant and Salazar grew out of and resulted from an argument originating in defendant's roundhouse over certain duties of employment that Salazar was allegedly failing to perform in appellant's judgment. The argument arose directly from terms of employment as between the two men and was exactly the type of grievance that both the union and defendant were interested in settling amicably and in such a manner as to further, and not hinder, the relationship between the various employees as to their personal disputes over duties to be performed and between the union and the defendant as to the efficient and uninterrupted carrying on of the operations involved. It cannot be said that an altercation off the premises of defendant, as this one was, over an argument of whose duties were whose, which argument took place on defendant's premises and directly affected the operation of defendant's business, differs in any material respect from an altercation that takes place on the premises. The quarrel and the violence were inseparably connected with the railroad's operations. The railroad was deprived of the work of its injured employee and its direct interest in the violation of its rules is manifest.

■ (2) Appellant's assertion that the investigation was "merely a farce" in that the result had been pre-determined by the railroad officers before any notices were sent to appellant to appear is not borne out by the record. On cross examination by appellant's counsel, Mr. Passwater testified:

"Q. Now, Mr. Passwater, you said that the Chicago office had been notified of this incident before the hearing and had approved Mr. Brooks' suspension. A. They were notified when I got that there petition, and wrote it up to Chicago, and then when we got their answer and their answer to the petition, why that is, that is the result of it there.

"Q. When you called Chicago who did you talk to? A. Called Mr. Mallery's office.

"Q. So you talked to Mr. Mallery personally by phone about the Brooks matter before the investigation, didn't you? A. Yes, sir.

"Q. Sure, and Mr. Mallery gave you, or sustained his suspension before the investigation, didn't he? A. Not until I wrote it up. I wrote that up and wrote it to Mr. Mallery so he could get it in writing, and then he gave it to me in writing.

"Q. And all that happened before the investigation on the 27th? A. Yes, sir.

"Q. But at any rate the actions that you had performed with reference to Brooks was approved by Mr. Mallery before the investigation? A. That is right. He was out of service until the pending investigation."

Mr. Mallery testified on direct examination that "I felt that the situation at Des

Moines was such as to warrant Mr. Brooks' suspension from service pending investigation, as authorized by the contract." It appears that appellant had not been dismissed prior to the hearing or prior to notices sent to him, by anyone, but rather had been suspended by Mr. Mallery pending a hearing. The contract between the Federation and defendant expressly provided (Rule 33) that "suspension in proper cases pending a hearing, which shall be prompt, shall not be deemed a violation of this rule." There is no assertion that a prompt hearing was not had[4] nor any assertion that the appellant's was not a "proper" case allowing such suspension. The evidence and testimony adduced at the trial convinces that appellant was not dismissed nor were any of his rights predetermined before a full hearing was had.

■ (3) The Railway Labor Act does not empower the courts to enforce against railroads any prescribed procedure for investigating and discharging its employees, nor does it empower the courts to entertain original actions to compel railroads to re-employ or give back pay to discharged employees. The trial court stated in its opinion that the "feeling by the plaintiff that he was imposed upon on account of his being of the Negro race * * * was not justified by the evidence" and our study of the testimony has led to no different conclusion. There is no basis in the working rules of the railroad, the agreement between the labor union and the railroad, or in the Railway Labor Act to support the appellant's feeling that he was entitled on account of his color to have a lawyer of his own choice or color represent him at the investigation of the charges against him. We have not failed to note the cases cited from the Supreme Court and other courts in which the judicial power has been firmly asserted to prevent unconstitutional racial discriminations, but the facts in this case do not bring it within their scope. Here it is plain that the fault of the appellant was the sole and efficient cause of the loss of his employment with the railroad and we find no error in the judgment dismissing his action against the railroad.

Affirmed at appellant's costs.

---

4. The altercation occurred on Sept. 16, notice of hearing was received by appellant Sept. 21, and the hearing was had on Sept. 27.