**Robert A. CARLE, Plaintiff,**

v.

**CONRAIL (CONSOLIDATED RAIL CORPORATION) et al., Defendants.**

No. 77 Civ. 298 (CHT).

United States District Court,
S. D. New York.

Feb. 9, 1977.

Bernard Rolnick, New York City, for plaintiff; Peter H. Dean, Gerald P. Goldsmith, New York City, of counsel.

Robert M. Peet, New York City, for defendant Conrail; Henry W. Herbert, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Plaintiff Robert A. Carle is a Consolidated Rail Corporation ("Conrail") Police Sergeant currently suspended pending a company trial on several charges of misconduct and violation of company rules. He contends that his suspension and pending trial are the result of a conspiracy between de-

fendant Lonnie Hamilton, a Conrail Police Inspector, defendant William Trainor, a Conrail Police Sergeant, defendant Conrail itself, and others, to harass and silence him in his attempts to expose the criminal activities of certain Conrail employees. By order to show cause, the plaintiff brought before the Court an application for a preliminary injunction to prevent the defendants from proceeding with the trial, now scheduled for February 11, 1977. For the reasons stated below, the application is denied.

The plaintiff contends that the company trial will deprive him of property without due process of law, damage his credibility as a witness, and "destroy him as a police officer." This Court is constrained, however, from interfering in what is, at this stage, essentially a private dispute between two parties governed by a collective bargaining agreement.[1]

■■ The company trial of the plaintiff has not yet taken place. The plaintiff attempts to assert, in advance of the trial, that certain aspects of the trial procedure will violate what he alleges to be the requirements of due process. It is clear, however, that the plaintiff's rights at this stage in the proceedings are fully set forth in the collective bargaining agreement and that he is not entitled to further rights, such as the right to counsel. *Clark v. Seaboard Coast Line R.R.,* 332 F.Supp. 380, 381 (N.D. Ga.1970); *D'Amico v. Pennsylvania R.R.,* 191 F.Supp. 160, 163 (S.D.N.Y.1961). As

---

1. The plaintiff also intimates that the collective bargaining agreement marked "Court's Exhibit 1" at the hearing on this matter was not in force during the time that many of the acts complained of took place. He bases this argument on the fact that the Penn Central Transportation Company, the entity which originally signed the agreement which took effect January 1, 1975, was succeeded by Conrail on April 1, 1976. Congress enabled this transition, however, by providing that collective bargaining agreements in force between the railroads being taken over and their employees would be assumed by Conrail "as though an original party thereto." Regional Rail Reorganization Act of 1973 § 504(a), 45 U.S.C. § 774(a). Moreover, on August 11, 1975, Conrail entered into an agreement with Local No. 732 of the Interna-

tional Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("IBT"), the plaintiff's union, which provided in part:

> "3. Labor agreements of the former railroads will apply to the positions allocated to the separate seniority districts until a new agreement is reached." Affidavit of J.S. Stewart, sworn to February 7, 1977, Attachment 1.

Finally, a new agreement between the IBT and Conrail was made on December 1, 1976, *id.* Attachment 2, and took effect on January 19, 1977. Court Exhibit 3. Thus, there is no doubt that a valid agreement between the plaintiff's union and Conrail existed at all times relevant to this action.

the court stated in *Edwards v. St. Louis-San Francisco R.R.,* 361 F.2d 946, 954 (7th Cir. 1966):

> "The federal courts are not the guarantors of any rights of either labor or management at the initial hearing, either by force of the Constitution or the Railway Labor Act, for, as we have said, at that stage the dispute is between private parties and the applicable procedure for settling the dispute is governed by the contract between them."

■ Plaintiff will have the right to appeal any decision of the trial officer up to the National Railway Adjustment Board, the body created by Congress to hear and finally resolve disputes between railroads and employees. 45 U.S.C. § 153. This Court should not interfere with the administrative process until it is completed. *Dorsey v. Chesapeake & Ohio Ry.,* 476 F.2d 243, 245 (4th Cir. 1973); *see Andrews v. Louisville & Nashville R.R.,* 406 U.S. 320, 325–26, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). The plaintiff's argument that the *Andrews* case does not apply since this dispute cannot be characterized as "minor" within the meaning of the Railway Labor Act is clearly in error. *D'Amico v. Pennsylvania R.R., supra,* 191 F.Supp. at 162. Nor can it be said that it would be "futile" for the plaintiff to pursue his administrative remedies. The plaintiff cites the case of *Glover v. St. Louis-San Francisco Ry.,* 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), to support his claim of futility. In that case, however, the Supreme Court found that the union and the employer had been acting in concert to deny the plaintiffs their rights because of a racial animus and concluded that to ask the plaintiffs to resort to the administrative process under those circumstances would indeed be futile. No such conditions obtain here. It should be noted that the plaintiff will be able to assert his due process rights with respect to any proceedings before the Adjustment Board following the action of that body. *Rosen v. Eastern Air Lines, Inc.,* 400 U.S. 462, 464 (5th Cir. 1968), *cert. denied,* 394 U.S. 959, 89 S.Ct. 1307, 22 L.Ed.2d 560 (1969); *Edwards v. St. Louis-San Francisco R.R., supra,* 361 F.2d at 953.

■ The plaintiff also contends that Conrail has repudiated the explicit terms of the collective bargaining agreement's discharge or suspension rules by not allowing the plaintiff certain procedural rights allegedly specified therein. While it appears to this Court that the plaintiff's contentions in this regard lack merit, the plaintiff's argument concerns the interpretation of the agreement and must itself be pursued through the grievance mechanism provided by the agreement. *D'Amico v. Pennsylvania R.R., supra,* 191 F.Supp. at 162.

■ The plaintiff further contends that the company trial will damage his credibility as a witness and destroy him as a police officer. The possible damage to the plaintiff's credibility as a witness is not a ground for the relief sought. Although the plaintiff claims that two of the charges against him are "criminal charges," the plaintiff's trial involves only private parties. Any result reached at trial or upon appeal of the trial will have no collateral effect upon criminal charges brought against the plaintiff by public law enforcement officials. As for the argument concerning the possible loss of the plaintiff's police "license," the appointment of a railroad police officer is granted by the superintendent of state police upon application of the railroad company and ends upon the policeman's termination as an employee of the railroad company. N.Y. Railroad Law § 88(1), (16). It thus appears that the plaintiff has no right to this appointment independent of his employment with Conrail. By the same token, the appointment could be regained upon the plaintiff's employment with another railroad company. Since the plaintiff's right to employment with Conrail is governed solely by the collective bargaining agreement, which sets forth a disciplinary procedure with which the Court cannot interfere at this stage, the plaintiff can gain no further rights by arguing that he will lose his police appointment.

For the reasons stated above, the plaintiff's application for an order staying his company trial is denied.

So ordered.