Anthony MARCELLO, Plaintiff,

v.

LONG ISLAND RAILROAD, R. K. Pattison, J. C. Valder and Robert Evans, Defendants.

No. 77 Civ. 5206.

United States District Court, S. D. New York.

Jan. 9, 1979.

Pearlman, Gottesman, Apat, Kupillas & Futterman, Kew Gardens, N. Y., for plaintiff; Richard P. Broder, Kew Gardens, N. Y., of counsel.

George M. Onken, Jamaica, N. Y., Cravath, Swaine & Moore, New York City, for defendants; Thomas M. Taranto, Laurence

H. Rubin, Jamaica, N. Y., Richard M. Hirsch, New York City, of counsel.

## OPINION

GAGLIARDI, District Judge.

The plaintiff, Anthony Marcello, formerly a managerial employee of the Long Island Railroad ("LIRR"), commenced this action pursuant to 42 U.S.C. § 1983 against the LIRR, its former president, R. K. Pattison, and other LIRR employees, alleging a deprivation of his constitutional rights in connection with the termination of his employment.[1] Plaintiff seeks relief in the form of compensatory damages, back pay, and other lost benefits.[2] Defendants have filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. For the reasons discussed below, the defendants' motion is granted.

### Statement of Facts [3]

In July 1976, LIRR officials started to investigate the sale of miniature bottles of alcoholic beverages known as "liquor kits" by and to its employees. Robert Evans, the LIRR's Chief of Investigations, contacted the Port Authority Police Department (PAPD) after purchasing a liquor kit that bore the insignia "AA" from railroad employee, Joseph Nitolli. (S¶ 14). The PAPD subsequently advised Evans that the kit may have been stolen from American Airlines (Id.).

On October 25, 1976, Evans and LIRR Superintendent of Transportation, Joseph Valder interviewed Nitolli in the presence of his attorney. Nitolli stated that he purchased liquor kits for resale from the plaintiff, a fellow railroad employee. Nitolli also named other employees who he be-

lieved were selling liquor kits (Id.). From October 27, 1976 to November 11, 1976, Evans interviewed the railroad employees that Nitolli mentioned and obtained statements from five of them, verifying that they were engaged in the sale of liquor kits. During this period, PAPD was in contact with Evans regarding the progress of his investigation and on November 12, 1976, Evans, accompanied by a PAPD detective, met with a representative of the Queens District Attorney's Office to discuss the case.

On November 2, 1976, Evans summoned the plaintiff to appear before him, informed the plaintiff of the purpose of the hearing, and read him his constitutional rights (S¶ 3, Complaint ¶ 8). At that time, plaintiff elected to make no statements and the meeting was adjourned so that plaintiff could confer with counsel (Id.). The following day, plaintiff again met with Evans and Valder in the presence of counsel. Plaintiff was advised that the entire matter had already been referred to the Queens County District Attorney's Office and that the plaintiff would be charged with conspiracy and possession of stolen goods. Upon advice of counsel, plaintiff again refused to make any statement (S¶ 7, Complaint ¶ 9). At this point, one of the few factual disputes between the parties arises. Plaintiff alleges that ". . . Evans thereupon stated, in sum and substance, that the information sought from plaintiff would be obtained from plaintiff at plaintiff's disciplinary hearing wherein plaintiff would be 'required' to answer the questions put to him upon penalty of dismissal for refusal to do so" (Complaint ¶ 9). For the purpose of this motion only, the defendants have agreed to regard this allegation as true,

1. The complaint alleges two causes of action: the first for false arrest and the second for unlawful discharge. Subsequent to the commencement of this action, the plaintiff entered a plea of guilty to a single count of criminal possession of stolen property in the third degree, and consequently has withdrawn his first cause of action.

2. Plaintiff is not seeking reinstatement in this action since he is presently pursuing this reme-

dy before administrative tribunals pursuant to the Railway Labor Act, 45 U.S.C. § 151 et seq.

3. The facts set forth in this section are derived from a stipulation entered into between the parties on March 30, 1978 for the limited purpose of defendants' motion for summary judgment. References to the stipulation are indicated as "S¶___."

"reserving the right to contest at trial what is alleged to have been said at the [November *3rd*] meeting . . . in the event defendants' motion is denied" (S¶ 7).

On November 10, 1976, plaintiff was suspended from service from the LIRR pending a disciplinary hearing scheduled for November 29, 1976 (S¶ 3, Complaint ¶ 8). He was advised that the charge upon which he would be tried was "conduct unbecoming an employee"; that he could be assisted by a "duly accredited representative of the Brotherhood of Railway Airline and Steamship Clerks" ("BRAC"); and that he would be permitted to summon and cross-examine witnesses (*Id.*).

The disciplinary hearing began on November 29*th* and concluded on December 1, 1976. The LIRR produced ten witnesses who testified that they purchased liquor kits from the plaintiff and/or from Nitolli (Tr. 13, 18, 22, 25, 28, 32, 40, 43, 47–8, 50–1). The trial officer reminded the plaintiff that he could summon and cross-examine witnesses (*Id.* at 8). Marcello, however, remained mute and refused to be represented by a member of BRAC because he claimed that he had a right to be represented by a lawyer particularly because LIRR officials had already referred the liquor kit matter to the Queens County District Attorney (*Id.* at 3, 6, 9). The plaintiff was never ordered by either the hearing officer or anyone else at the hearing to testify under penalty of automatic dismissal regarding his role in the liquor kit transactions (S¶ 15). The trial officer stated, however, that:

> I must advise you at this time that if . . . [your position is to remain mute], this does not preclude the carrier from issuing discipline if, as the result of this trial, the charge which has been placed against you has been sustained.

(Tr. ¶ 9). At the end of the hearing, the trial officer again warned the plaintiff of the danger of not putting forth his case:

> You stated that it was your desire to remain mute during these proceedings and not to answer any questions poased [sic] to you by the trial officer. Mr. Marcello, I wish to advise you at this time that if you persist in that position of remaining mute and refusing to answer questions that you are placing yourself in a very precarious position. I offer you the opportunity at this time to change that position if you so desire.

(*Id.* at 58). Plaintiff continued to be silent. On December 13, 1976, plaintiff was discharged from employment with the LIRR for "conduct unbecoming an employee."

The following day, the Queens County District Attorney presented the evidence developed at the disciplinary hearing to a grand jury. Many of the same witnesses who testified at the hearing also testified before the grand jury. For the purpose of this motion only, defendants agree that all of these witnesses testified with transactional immunity (S¶ 8B; Complaint ¶ 16). The plaintiff, however, was not offered any form of immunity from criminal prosecution, and thus was not a witness before the grand jury (S¶ 17, 18). The grand jury returned a ten count felony indictment, against the plaintiff on December 16, 1976 charging grand larceny and criminal possession of stolen property (*Id.* at ¶ 4). During the trial in Supreme Court, Queens County, plaintiff pleaded guilty to a single count of criminal possession of stolen property in the third degree (*Id.* at ¶ 19). Plaintiff was subsequently sentenced to three years' probation (*Id.*).

By letter of December 20, 1976, plaintiff appealed his dismissal from the LIRR to Valder (*Id.* at ¶ 30). Valder advised plaintiff on February 7, 1977 that his appeal was denied (*Id.* at ¶ 31). Plaintiff directed a further appeal to LIRR President, Pattison, who granted the appeal, but also issued a denial. Plaintiff was not permitted counsel at either of these appeals since his attorney was not a duly authorized representative of BRAC. BRAC subsequently filed a claim on behalf of plaintiff with the National Railroad Adjustment Board ("NRAB") for reinstatement and back pay (*Id.* at 34).

*Discussion*

Plaintiff asserts that the LIRR and its officials, acting under color of state law,[4] deprived him of his constitutional rights guaranteed by (1) the due process clause of the Fourteenth Amendment, (2) the equal protection clause of the Fourteenth Amendment, and (3) the prohibition against cruel and unusual punishment embodied in the Eighth Amendment. After examining each of these alleged violations *in seriatim*, this court finds that the plaintiff's claims are without merit.

## I. Due Process Claim

■ At the threshold, it is important to note that the successful assertion of plaintiff's due process claims depends upon whether or not his interest in retaining his position as a passenger terminal agent for the LIRR rises to the level of a "property" or "liberty" interest protected by the Fourteenth Amendment. The Supreme Court decisions in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) establish that a pre-termination hearing must be granted to an employee whenever a decision to discharge him will deprive him of either a property interest, such as his continued right to work under an employment contract, or a liberty interest, such as his freedom to protect his "good name, reputation, honor or integrity." *Board of Regents v. Roth, supra*, 408 U.S. at 573, 576–77, 92 S.Ct. at 2707; *Perry v. Sindermann*, 408 U.S. at 599–602, 92 S.Ct. 2694. Marcel-

lo, as a non-union managerial employee, does not assert any property right to continued employment, but rests his due process claim on his liberty interest to rebut any charges that "might seriously damage his standing and associations in the community" or impose "a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." *Board of Regents v. Roth, supra*, 408 U.S. at 573, 92 S.Ct. at 2707; *see also Wahba v. New York University*, 492 F.2d 96, 98 n.2 (2d Cir.), *cert. denied*, 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974); *Simard v. Board of Education*, 473 F.2d 988, 992 (2d Cir. 1973); *Russell v. Hodges, supra*, 470 F.2d 212, 216 (2d Cir. 1972). The *Roth* court noted that mere proof that an employee's discharge from one job "might make him somewhat less attractive to some other employers would [not be sufficient to] establish the kind of foreclosure of opportunities that might amount to a deprivation of 'liberty.'" *Board of Regents v. Roth, supra*, 408 U.S. at 574 n.13, 92 S.Ct. at 2708. Rather, the Court stated that a charge of dishonesty or immorality, for example, might implicate an individual's liberty interest. *Id.* at 573, 92 S.Ct. 2701.

■ The LIRR charged the plaintiff with "conduct unbecoming a LIRR employee during an indefinite time in the year 1976 wherein [he was] involved in the sale of alcoholic beverages to various employees of this company" (Exh. A at 2). Although there is nothing in the charge itself that would necessarily seriously damage or stigmatize the plaintiff, evidence was intro-

4. Both parties agree that the defendant LIRR was acting under color of state law (S¶ 6). As this court stated in *Capers v. Long Island Railroad*, 429 F.Supp. 1359, 1367 n.11 (S.D.N.Y. 1977):

> . . . it appears that the LIRR as a "subsidiary corporation" of the Metropolitan Transportation Authority (MTA) since 1966, is acting under color of state law and is bound by the requirements of the Fourteenth Amendment. *See Quintero v. Long Island Railroad*, 55 Misc.2d 813, 286 N.Y.S.2d 748 (S.Ct.Kings Co.1968); *see also Taylor v. New York City Transit Authority*, 433 F.2d 665 (2d Cir. 1970); *Kissinger v. New York City Transit Authority*, 274 F.Supp. 438, 441 (S.D.N.Y.

1967). The MTA is a "public benefit corporation" created by the State of New York in 1965. Title 11, Public Authority Law §§ 1263 and 1266 (McKinney 1970). The LIRR as a subsidiary corporation entirely owned and operated by the MTA, enjoys the "privileges, immunities, tax exemptions and other exemptions" of the MTA and is "subject to the restrictions and limitations to which the authority may be subject." Public Authorities Law § 1266(5). Under the circumstances, the LIRR is acting under color of state law. *See Burton v. Wilmington Parking Authority*, 365 U.S. 715, 726, [81 S.Ct. 856, 6 L.Ed.2d 45] (1961).

duced at the hearing that the liquor kits were stolen (*See, e. g.*, Tr. 57). This testimony, coupled with the actual charge, would certainly have a stigmatizing effect upon the plaintiff so long as the reasons for the plaintiff's discharge were publicized. *See Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Plaintiff's activities were the subject of a newspaper article appearing in the *Long Island Press* on January 25, 1977. Although the article focused primarily on Marcello's indictment "for the sale and purchase . . . of stolen liquor", it also reported that the plaintiff was disciplined by the LIRR. It is likely that a reader of the article might have inferred that the plaintiff was being disciplined for reasons similar to those for which he was being indicted. Therefore, the stigmatizing information was sufficiently publicized to satisfy *Bishop v. Wood*.[5]

Having established that the plaintiff has a liberty interest protected by the Fourteenth Amendment, the court must next determine whether or not the form of the hearing that the defendant railroad provided to the plaintiff complied with due process. *Board of Regents v. Roth, supra* at 570–71, 92 S.Ct. 2701. In this case, prior to the plaintiff's suspension and subsequent discharge, he was (1) advised of the charges against him and given *Miranda* warnings; and (2) afforded an informal hearing before Evans and Valder, at which time the plaintiff was permitted to have counsel present, again informed of the nature of the charges, and given an opportunity to respond to them. In addition, plaintiff was later afforded a more formal hearing before a LIRR hearing officer at which time he was able to summon and cross-examine witnesses. Plaintiff nevertheless claims that the November 29, 1978 hearing was inherently unfair because (1) he was not permitted to be represented by counsel and because (2) he was not granted any form of immunity from criminal prosecution and therefore was not able to defend himself adequately.

Courts have repeatedly held that the Constitution does not entitle an employee to counsel at an initial disciplinary hearing conducted by his employer. *See Edwards v. St. Louis-San Francisco Railroad Co.*, 361 F.2d 946, 954 n.19 (7th Cir. 1977) citing *D'Elia v. New York, New Haven & Hartford R. Co.*, 230 F.Supp. 912 (D.Conn. 1964); *D'Amico v. Pennsylvania Railroad Co.*, 191 F.Supp. 160 (S.D.N.Y.1961); *Butler v. Thompson*, 192 F.2d 831 (8th Cir. 1951); *Broady v. Illinois Cent. R. Co.*, 191 F.2d 73 (7th Cir. 1951), *cert. den.*, 342 U.S. 897, 72 S.Ct. 231, 96 L.Ed. 672 (1951); *Brooks v. Chicago, R. I. & P.R. Co.*, 177 F.2d 385 (8th Cir. 1949). *See also Carle v. Consolidated Rail Corp.*, 426 F.Supp. 1045, 1947 (S.D.N.Y. 1977).[6] Plaintiff attempts to distinguish

---

**5.** Because of the result this court reaches regarding plaintiff's due process claims, it need not decide the applicability of *Codd v. Velger*, 420 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). In *Codd*, the Supreme Court held that a policeman's right to a pre-termination hearing is defeated by his failure to allege falsity of the information that allegedly denies him of due process because of its stigmatizing effect. *Id.* at 623, 97 S.Ct. 882. Defendants assert that Marcello's due process claims must fall "because he admits that the charges upon which he was discharged were substantially true." (Defendants' Memorandum of Law at 16). Plaintiff did not make such an admission at the hearing; on the contrary, he refused to testify. Further, given that Marcello claims that he remained mute at the disciplinary hearing because he did not want to say anything that might prove damaging in the subsequent criminal action, this may be one of the instances in which plaintiff's right to a hearing should not be negated for failing to plead falsity in his complaint. *Id.* at 629–30 n.1, 97 S.Ct. 882 n.1. (Brennan, J., dissenting).

**6.** Whether or not plaintiff's rights are governed by the collective bargaining agreement entered into between the LIRR and the Brotherhood of Railway Airline Handlers, and Station Employees ("the BRAC agreement") need not concern this court. A collective bargaining agreement clearly cannot lawfully abrogate rights that the Constitution guarantees. Additionally, it is well settled that questions involving the interpretation of collective bargaining agreements implemented in accordance with the Railway Labor Act, 45 U.S.C. § 151 *et seq.* are within the exclusive jurisdiction of the National Railroad Adjustment Board. *Andrews v. Louisville & Nashville Railroad Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *Brotherhood of*

these cases on the ground that they did not involve situations in which an employee was the target of a criminal charge. This distinction, however, was addressed and rejected in *Carle.* There, an employee of defendant Conrail contended that he was entitled to counsel at his disciplinary hearing because two of the charges brought against him by his employer were essentially criminal charges and that the company proceedings might damage his credibility as a witness in a subsequent criminal action. The court responded in the following manner:

> . . . plaintiff's trial involves only private parties. . . . [A]ny result reached at trial will have no collateral effect upon criminal charges brought against the plaintiff by public law enforcement officials.

*Carle v. Consolidated Rail Corp., supra,* at 1047. Plaintiff has not shown why any different result is required in the case before this court. Absent such a showing, this court cannot conclude that the disciplinary hearing was inherently unfair because plaintiff was denied the assistance of counsel.[7]

Plaintiff asserts that his due process rights were also violated at the hearing because he was not granted any form of immunity from criminal prosecution. Without the assurance that the statements made at the hearing would not be used against him at his subsequent criminal trial, plaintiff alleges that he was faced with the "constitutionally obnoxious dilemma" of either speaking in his own defense at the risk of incriminating himself in the subsequent criminal prosecution, or remaining silent at the risk of obtaining more stringent discipline from his employer.

The Supreme Court addressed the constitutionality of a procedure that places an individual in such a dilemma in *Baxter v.*

*Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). In *Baxter,* respondent Palmigiano was an inmate at the Rhode Island Correctional Institution. During his incarceration, the prison's disciplinary board charged the plaintiff with "inciting a disturbance and disrupt[ion] of prison operations . . ." The disciplinary board informed respondent that, in addition to disciplinary measures instituted by the board, he might be prosecuted for a violation of state law. The board also informed him that he had a right to remain silent, but that his silence could be used against him at the hearing. Palmigiano claimed, as does the plaintiff in the case at bar, that he was denied due process "insofar as he was not provided with use immunity for statements [that] he might have made within the disciplinary hearing." *Id.* at 314, 96 S.Ct. at 1556. The Supreme Court rejected the respondent's argument and upheld the procedures employed by the Rhode Island prison officials. The Court first stated that the board's drawing of adverse inferences from the respondent's silence did not contravene its earlier decision in *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) because that case only prohibited drawing such inferences from the defendant's silence in criminal cases. The critical factor in the Court's reasoning, however, which is also determinative of the issue in the present case, is that "a prison inmate in Rhode Island electing to remain silent during his disciplinary hearing . . . is not in consequence of his silence *automatically* found guilty of the infraction[s] with which he has been charged":

> Under Rhode Island law, disciplinary decisions "must be based on substantial evidence manifested in the record of the disciplinary proceeding." It is thus undisputed that an inmate's silence in and of itself is insufficient to support an ad-

---

*Locomotive Engineers v. Louisville & Nashville Railroad Co.,* 373 U.S. 33, 38, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963); *Edwards v. St. Louis-San Francisco Railroad Co.,* 361 F.2d 946, 954 (7th Cir. 1966); *Carle v. Consolidated Rail Corp.,* 426 F.Supp. 1045 (S.D.N.Y.1977).

7. In an analogous situation, inmates brought before a prison disciplinary board have been denied the right to be represented by either retained or appointed counsel whether or not the charges involve conduct punishable as a crime under state law. *Baxter v. Palmigiano,* 425 U.S. 308, 314–15, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).

verse decision by the Disciplinary Board. In this respect, this case is very different from the circumstances before the Court in the *Garrity-Lefkowitz* decisions, where refusal to submit to interrogation and to waive the Fifth Amendment privilege, standing alone and without regard to the other evidence, resulted in loss of employment or opportunity to contract with the State. There, failure to respond to interrogation was treated as a final admission of guilt. Here, Palmigiano remained silent at the hearing in the face of evidence that incriminated him; and, as far as this record reveals, his silence was given no more evidentiary value than was warranted by the facts surrounding his case. *Id.* 425 U.S. at 317–18, 96 S.Ct. at 1557 (emphasis added) (citation omitted).

■ In the instant case, the decision by the LIRR to discharge Marcello for "conduct unbecoming a railroad employee" was no more an "automatic consequence" of Marcello's exercise of his right to remain silent than was the prison board's decision to place Palmigiano in punitive segregation for thirty days for "inciting a disturbance." Plaintiff alleges that Evans told the plaintiff, "in sum and substance, that the information sought from [him] would be obtained from plaintiff at plaintiff's disciplinary hearing where plaintiff would be *required* to answer questions put to him under penalty of dismissal for refusal to do so" (Complaint ¶ 9) (emphasis added). Even assuming that this allegation is true, the transcript of the November 29th hearing indicates that the hearing officer neither ordered plaintiff to testify nor, more importantly, suggested to him that he would be disciplined purely on the basis of his failure to do so. On the contrary, the trial officer stated at the beginning of the hearing that:

> "[i]t is historical in the railroad industry that no discipline can be issued unless as a result of said trial, the carrier sustains the charge. . . ."

(Tr. at 7). Furthermore, only after nine witnesses testified that they purchased liquor kits from Marcello, presenting an overwhelming amount of evidence against the plaintiff, did the hearing officer warn Marcello of the "precarious position" that he was placing himself in by not putting forth a defense (Tr. 58). Nor can this case be distinguished from *Baxter* on the ground that *Baxter* involved a situation in which there was only a *possibility* of criminal charges being filed against Palmigiano whereas in the present action adverse inferences were drawn from plaintiff's silence "at a time when he was the target of a pending criminal investigation" (Plaintiff's Brief at 20). Even assuming *arguendo* that these two situations are factually distinct, this court agrees with the First Circuit when it responded to the same argument by simply noting that "the Court's opinion in *Baxter* [does not . . .] accord leeway for such distinctions." *See Roberts v. Taylor*, 540 F.2d 540, 542 (1st Cir. 1976). Thus, the *Baxter* decision clearly provides that the plaintiff was not denied due process because he was not provided with immunity for statements that he might have made at the disciplinary hearing.

## II. Equal Protection and Cruel and Unusual Punishment Claims

■ Plaintiff also contends that he was denied equal protection under the law as guaranteed by the Fourteenth Amendment because the LIRR, acting under color of state law,[8] chose to pursue disciplinary proceedings against only one employee instead of each employee who possessed liquor kits. This argument, however, is clearly without merit. The record establishes that the railroad employees who were engaged in the purchase or sale of liquor kits were not "similarly situated" and thus, the plaintiff cannot claim that he was denied equal protection based upon his disparate treatment. Of all the employees who were involved in liquor kit transactions, only Nitolli and the plaintiff sold a large number of liquor kits for profit (Exh. A at 16). The LIRR demoted Nitolli from a non-union managerial position to a unionized nonsupervisory job, resulting in a $845 annual reduction in pay,

---

8.  *See* note 4, *supra*.

and issued a letter of reprimand (S¶ 23). Although plaintiff was dismissed, rather than demoted, for his part in the liquor kit scheme, there was testimony at the hearing that plaintiff initiated the scheme, brought the kits onto LIRR property, and established their chain of distribution (Exh. A at 15). These facts alone indicate that there was a rational basis on which the LIRR could determine that Marcello should be disciplined more harshly than the other employees. *Cf. Allen v. VanCantfort*, 436 F.2d 625, 631 (1st Cir.), *cert. denied*, 402 U.S. 1008, 91 S.Ct. 2189, 29 L.Ed.2d 430 (1971); *United States v. Vita*, 209 F.Supp. 172 (E.D. N.Y.1962) (no constitutional requirement that co-defendants in criminal case receive the same sentence).

■ Plaintiff's claim under the constitutional prohibition against cruel and unusual punishment presents no greater merit. Given the degree of plaintiff's participation, and his subsequent admission to the charge of possessing stolen property, the disciplinary measures undertaken by the LIRR cannot be considered so "grossly excessive" as to violate the Eighth Amendment. *See, e. g. Furman v. Georgia*, 408 U.S. 238, 314, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (Marshall, J., concurring).

### Conclusion

Accordingly, defendant's motion for summary judgment pursuant to Rule 56, Fed.R. Civ.P. is granted and the Clerk is directed to enter judgment in favor of the defendants dismissing the complaint.

So Ordered.