Sam Mitchell, d/b/a Riptide, Plaintiff-Appellant, v. Loren B. Sackett, Howard S. Cartwright and Earl W. Merritt, Commissioners of the Illinois Liquor Control Commission of the State of Illinois, and Stanley E. Bejger, Mayor of the City of Calumet City and Local Liquor Commissioner, Defendants-Appellees.

Gen. No. 47,974.

First District, Third Division.
November 2, 1960.

Cooney and Stenn, of Chicago (Charles D. Snewind, of counsel) for appellant.

Grenville Beardsley, Attorney General of the State of Illinois (William C. Wines, Raymond S. Sarnow and A. Zola Groves, Assistant Attorneys General, of counsel) for appellees.

MR. JUSTICE McCORMICK delivered the opinion of the court.

The local retail liquor license of Sam Mitchell, doing business as Riptide, (hereafter referred to as plaintiff), was revoked by the Mayor of Calumet City, Illinois, the Local Liquor Commissioner. The Liquor Control Commission of Illinois, on appeal, affirmed the revocation after a hearing. The plaintiff applied for a rehearing which was denied, and he thereupon filed this action in the Circuit Court of Cook County under the Administrative Review Act (Ill. Rev. Stat. 1959, chap. 110, pars. 264–279). The court entered a judgment order affirming the order of the Illinois Liquor Control Commission. From that judgment order this appeal is taken.

The plaintiff here contends that the trial court erred in denying his petition for change of venue and that the findings of the Liquor Control Commission of Illinois were not supported by adequate evidence.

Revocation of plaintiff's license was predicated upon two findings, first, that the plaintiff permitted solicitation to prostitution upon the licensed premises, and second, that he permitted solicitation of sales of alcoholic liquors upon the licensed premises by an employee for reward or compensation.

In the record of the hearing before the Illinois Liquor Control Commission there is evidence that three state troopers, Mikus, Munch and Roberts, in February 1959 went to the Riptide, a night club in Calumet City, for the purpose of investigation. The troopers each ordered a beer at the bar. Mikus testified that he was approached by a female entertainer, one Drew, and that at that time he, in compliance with her request, bought her a drink; that she then asked him to go to the so-called "champagne room," a lounge in the rear, for the purpose of prostitution;

338

that she told him the fee would be $15.00; and that he went to the "champagne room" with Drew. He further testified that the "champagne room," which contained booths and an unused service bar, was dimly lighted. He and Drew sat in one of the booths. A waitress came to the booth and Drew asked Mikus to buy champagne, which he did. He further testified that Drew then exposed her body and engaged in certain lewd conduct. At that time he refused to accede to her proposition concerning sexual intercourse. He then left, telling her he would be back the next night. He further testified that later the same night he returned and was again solicited to prostitution by Drew. During all of this time one Sarfaty was in charge of the tavern, and at the time of the first conversation between Drew and Mikus he was behind the bar and he saw Drew and Mikus go into the "champagne room."

That same night Sarfaty and Drew were arrested. Sarfaty was charged with keeping a disorderly house and Drew with soliciting to prostitution. They were tried before a police magistrate.

For the plaintiff the waitress testified that at the time she served the champagne Mikus and Drew were having a friendly conversation in one of the booths in the "champagne room"; that there were other people in the room; and that she had made several trips there. Sarfaty testified that he was not a bartender, but was employed to take care of the books, and that he does not remember whether or not he saw the officers at the lounge on February 5, 1959. The plaintiff testified that he was asked by Drew's husband to employ her; that she was a member of the Actors Guild Variety Artists of America; that she was an exotic dancer, commonly known as a "strip teaser," and during her act she only retained such bodily covering as would bring her, in the opinion of

the witness, within the law; and that Sarfaty's duties are those of a general manager when he is there but that he is not a bartender.

Mikus also testified that while he was in the "champagne room" with Drew no one else was there except the waitress from whom he ordered the champagne, and that one of the other girls entered with a man whom she was soliciting to prostitution and they were discussing the financial arrangements. Mikus further testified that he arrested Sarfaty and that he attended the trial of Drew and Sarfaty before a police magistrate.

The undisputed evidence in the record establishes that Drew solicited Mikus to engage in an act of sexual intercourse for pay. The plaintiff contends that there is no evidence in the record that he permitted such conduct on the part of Drew. There is evidence in the record, however, that Sarfaty during the absence of the plaintiff was the manager and had charge of the lounge; that at the time when Drew was soliciting Mikus he, Sarfaty, was standing behind the bar in close proximity to Mikus, and it is apparent that Sarfaty must have seen Drew and Mikus go to the "champagne room." There is sufficient evidence in the record to place responsibility upon Sarfaty, as manager of the lounge. The plaintiff testified that he spent three or four hours at the lounge every day and that when he was not there Sarfaty took his place. Consequently the plaintiff is responsible if Sarfaty permitted the misconduct of Drew during his absence and while Sarfaty was managing the tavern.

 The police officers testified, over the objection of the plaintiff, that Drew was convicted of soliciting to prostitution in the trial before the police magistrate. The conviction followed her arrest on February 5th and was based on the testimony of the officers. Without objection the officers testified to the arrest

of Drew on the charge of soliciting to prostitution and that she was tried before the same police magistrate and on the same day as Sarfaty. The only objections to the testimony concerning Drew's conviction were that it was not material nor the best evidence. In considering this case it must be noted that the trial was before a board composed of laymen and that the same strict rules with reference to the admissibility of evidence do not apply in proceedings before administrative boards. After the officers had testified, without objection, that Sarfaty was tried the same date and before the same magistrate, over the objection of the plaintiff the officers further testified that Sarfaty was convicted. Subsequently the attorneys representing the city offered a transcript of the proceedings before the police magistrate. This transcript was objected to by the plaintiff and was admitted by the Commission with the statement that it would be admitted subject to the objection. No motion to strike was made, nor was there any further ruling. That evidence must be considered as being properly in the record. Village of Palatine v. Dahle, 385 Ill. 621, 625, 53 N.E.2d 608. Even if the evidence concerning the conviction of Drew had been improperly admitted, the record shows that Drew was arrested at the same time as Sarfaty, that she was charged with soliciting to prostitution, that he was charged with being the keeper of a disorderly house, and that he was convicted, in the same hearing, at the same time, and before the same magistrate before whom Drew was tried. If there was error in admitting evidence of the conviction of Drew, considering all the facts and circumstances in the case such error would not require a reversal since it did not materially affect the rights of the plaintiff nor result in substantial injustice to him. (Administrative Review Act, sec. 12(2), chap. 110, par. 275(2).)

■ The plaintiff also argues that the evidence concerning the "champagne room" renders incredible Mikus' testimony that Drew took him into the "champagne room" for the purpose of engaging in sexual intercourse. The pictures of the room admitted in evidence and the oral testimony concerning it indicated that it was a dimly lighted room. Mikus testified that at the time there was no one in the room except the waitress who brought in the champagne and the other man and woman who had entered apparently for the purpose of prostitution. Neither from a physical standpoint nor from the ethical and moral aura pervading the club could it be said as a matter of law that such conduct would not be contemplated. There is nothing in the record which would require Mikus' testimony to be disregarded.

■ The finding was that Drew solicited Mikus to an act of prostitution. The plaintiff further argues that Mikus' testimony as to what occurred in the "champagne room" was not an act of prostitution. However, such a determination is not necessary because the finding was only with reference to soliciting to prostitution and the testimony with regard to that is uncontradicted. When we consider the type of dancing engaged in by Drew and the other entertainers, together with the other evidence in the record, it is apparent that the entire atmosphere of the "night club" was lewd and obscene. In our opinion there was sufficient evidence in the record to sustain the finding and order of the Liquor Control Commission.

■ We find no merit in the contention of the plaintiff that since Drew belonged to a union he was not her employer. He hired her. She worked in his place of business, followed his instruction and was paid by him. Nothing further is required.

This suit was brought under the Administrative Review Act, which spells out the procedure in such

342

cases. Administrative agencies are under the Act if the law creating them so provides. The Act covers any action to review judicially a final decision of any such administrative agency. It provides that the action shall be commenced by the filing of a complaint, the form of which is specifically set out; that summons shall be issued; and that an answer shall be filed by the administrative agency, which ordinarily shall consist of the original or certified copy of the entire record of proceedings under review, including the findings and decision. It further provides that the court shall hear and determine the action with all convenient speed. No new or additional evidence can be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct. The Circuit or Superior Court on review shall have the power to affirm or reverse the decision of the administrative agency in whole or in part, and it may send the case back to the administrative agency for the purpose of taking additional evidence. The Act also contains a provision for review by the Appellate Court. It states that the provisions of the Civil Practice Act apply to all proceedings under the Act unless otherwise provided for therein.

■ When a decision of an administrative agency is brought on appeal to the Circuit or Superior Court under the provisions of the Administrative Review Act, the question primarily presented to the court is whether or not the findings and decision of the administrative agency are against the manifest weight of the evidence, and that must be determined by the court from the record before it. "The function of the Circuit Court or Superior Court in acting as the primary court of review of the finding of an administrative agency is much different from its function in passing on the verdict of the jury returned in a case

tried before it. In the latter case the court has the duty and right to consider the weight of the evidence and to grant a new trial if the verdict is not sustained by a preponderance of the evidence. In the former it can only set aside the finding of the administrative agency if the finding is against the manifest weight of the evidence, and the Appellate Court has no greater right." Adamek v. Civil Service Commission of Chicago, 17 Ill.App.2d 11, 149 N.E.2d 466, and cases cited therein. The same rule is laid down in Parker v. Dept. of Registration & Education, 5 Ill.2d 288, 125 N.E.2d 494. The function of the Appellate Court as the secondary court of review is precisely the same as that of the Superior and Circuit Courts as the primary courts of review under the Act.

The Liquor Control Commission of the State of Illinois found that the charges made against the plaintiff that he permitted solicitation to prostitution in his licensed premises and solicitation of sales of alcoholic liquor upon the said premises by an employee or employees or other persons in charge of the premises in violation of the ordinances of Calumet City, Illinois and the revised statutes of the State of Illinois are sustained by the evidence adduced before the Commission. In this case both the trial court and the Liquor Control Commission found that Drew, with the permission of the plaintiff, solicited Mikus for the purpose of prostitution in the tavern premises and the trial court found that the findings of the Liquor Control Commission are "not contrary to law and are not against the manifest weight of the evidence." The trial court affirmed the order of the said Commission revoking the license of the plaintiff. The trial court and the Liquor Control Commission also found that Drew, with the permission of the plaintiff, solicited Mikus for the purchase of alcoholic liquor for reward or compensation. The latter finding is not sustained

344

by the evidence. There is no evidence that a commission was paid Drew for the liquor purchased for her by Mikus. The fact that that finding is not supported by the evidence is immaterial since the finding of solicitation to prostitution is sufficient to support the revocation of plaintiff's license.

We will next consider the plaintiff's contention that the trial court erred in denying his petition for a change of venue. The plaintiff filed the petition in the trial court before the return day provided for in the Administrative Review Act. The petition was presented to the court at ten o'clock on October 20, 1959, and in the sworn petition the plaintiff stated that knowledge of the prejudice of the judge first came to him October 19th at 6:15 p. m. The court overruled the petition and proceeded with the hearing.

The defendants argue that the change of venue statute does not apply to proceedings under the Administrative Review Act. It is admitted that there is no Illinois case directly in point.

■ This action was brought to review the findings and order of the Liquor Control Commission. The Venue Act applies to any "civil suit or proceeding in law or equity" (Venue Act, sec. 1, (Ill. Rev. Stat. 1959, chap. 146, par. 1)). This action falls within such category. People v. Scott, 326 Ill. 327, 157 N. E. 247, and see Johnston v. State, 212 Ind. 375, 8 N.E.2d 590. The legislature could have exempted actions under the Administrative Review Act. It did not see fit to do so, and we hold that the instant case comes under the Venue Act.

It is apparent from the record that the petition was in proper form in compliance with the statute and was presented to the court in apt time. The court should have allowed a change of venue.

■ The case is before us on exactly the same record upon which it was heard in the Circuit Court

of Cook County, and the function of this court in considering the record is exactly the same. We have found that there is sufficient evidence in the record to sustain the finding that Drew solicited Mikus to prostitution in the tavern premises and such solicitation was permitted by the plaintiff, and that such a finding would justify a revocation of plaintiff's liquor license. Under the circumstances and the record in the case before us it would serve no good purpose to reverse and remand the case to the trial court with directions. If we did so the directions to the trial court would be to rescind all orders made after the petition for change of venue was filed and the judge to whom the case should be assigned for a new trial should take further proceedings consistent with the views expressed in the opinion. We have here passed upon the question of the manifest weight of the evidence and found that the finding was sufficient to sustain a revocation of the license. A judge of the Circuit Court would of necessity have the same record before him and the directions on a remandment would be that he enter the same order we are now entering. Instead of going through this idle procedure we believe it would be more conducive to an orderly administration of justice for us to reverse the judgment of the trial court and enter judgment here. 3 I. L. P., Appeal and Error, sec. 949.

We find that there is ample evidence in the record before us to support the finding of the Illinois Liquor Control Commission that Drew, with the permission of the plaintiff, solicited Mikus for the purpose of prostitution in the premises of the tavern operated by the plaintiff known as "Riptide" in Calumet City, Illinois, contrary to the ordinances of Calumet City, Illinois and the revised statutes of the State of Illinois; and we further find that the said finding and the order of the Illinois Liquor Control Commission are not

contrary to law and are not against the manifest weight of the evidence.

For error in not granting a change of venue the judgment of the Circuit Court is reversed, and we here enter judgment that the order entered by the Illinois Liquor Control Commission, which affirmed the order of the Local Liquor Control Commissioner of Calumet City, Illinois revoking the retail liquor license of Samuel Mitchell, doing business as Riptide, the plaintiff herein, was proper and sustained by the evidence, and such order is hereby affirmed.

Reversed and judgment here.

SCHWARTZ, P. J. and DEMPSEY, J., concur.