PARAMOUNT CONSULTING AGENCY, INC., Plaintiff-Appellant, *v.* DONALD JOHNSON, Director, The Department of Labor, *et al.*, Defendants-Appellees.

First District (5th Division)    No. 78-219

Opinion filed August 24, 1979.

750

Theodore P. Fields, of Fields & Fields, of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Richard J. Puchalski, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Paramount Consulting Agency, Inc. (Paramount), appeals from an order of the circuit court of Cook County which affirmed the Department of Labor's decision revoking Paramount's license to operate a private employment agency. The action was brought against defendants Donald Johnson, Director of the Department of Labor, and John Riorden, Superintendent of the Division of Private Employment Agencies (hereinafter referred to collectively as "Department"), pursuant to the Administrative Review Act. (Ill. Rev. Stat. 1975, ch. 110, pars. 264 through 279.) The Department has cross-appealed from an order denying its motion to dismiss Paramount's action for failure to pay the cost of reproducing the hearing transcript, as provided in section 12 of the private employment agencies act. (Ill. Rev. Stat. 1973, ch. 48, par. 197l.)[1] We affirm in part, reverse in part, and remand for further proceedings.

Paramount is a licensed employment agency which is incorporated in Illinois and lists its officers as James G. Ivan, president, Forest Park, Illinois, and Helen Ivan, secretary. James G. Ivan is licensed as an employment counselor by the State of Illinois. On the application for his

---

[1] The private employment agencies act, formerly found at Ill. Rev. Stat. 1973, ch. 48, pars. 197a through 197o, was renumbered and transferred to Ill. Rev. Stat. ch. 111, pars. 901 through 918, effective with the publication of Ill. Rev. Stat. 1977.

employment counselor's license, Ivan designated his trade name as Mark Thomas Stein. The Department filed a seven-count complaint against Paramount on January 3, 1975, alleging numerous violations of the private employment agencies act (Act), all of which occurred between March 1974 and December 1974. Following an extensive hearing, the Department issued its findings of fact and conclusions of law on August 6, 1975.

The hearing officer found that Paramount, through the actions of Ivan, followed two basic methods in advertising and filling job vacancies. The first method involved the placing of an ad in the Chicago Tribune with only a phone number being provided for an applicant's response. The phone number would be either an unlisted number assigned and billed to Ivan, the number of an answering service or the number of a company with which a person placed by Ivan was connected. An applicant who responded to such an ad would be asked to leave a name and phone number and would later be contacted by a person identifying himself as Mark Thomas Stein. Following a telephone interview with Stein, the applicant would be sent to a specific job interview, which in turn could be followed by the placement of the applicant. Paramount would then bill the employer, in many instances showing on the invoice that the placement had been made by Mark Stein. The second method differed from the first in that it involved the receiving of information about an applicant from a third party rather than in response to an advertisement.

After making other detailed findings of fact pertaining to the individual counts charged against Paramount, the hearing officer concluded that all seven counts of the complaint were sustained and that Ivan was guilty of immoral and illegal conduct in operating his business, and ordered Paramount's license revoked. The Department's decision was affirmed in the administrative review action and Paramount appealed. The Department has cross-appealed from the trial court's denial of its motion to dismiss Paramount's administrative review action for failure to pay for the hearing transcript. The order revoking Paramount's license was stayed pending this appeal.

OPINION

I.

On appeal, Paramount contends that the hearing officer's decision was against the manifest weight of the competent evidence, maintaining that none of the allegations in the seven counts of the complaint is supported by any competent evidence.

In an administrative review action, the findings of the administrative agency are considered *prima facie* correct, and review is limited to

whether or not the agency's decision is against the manifest weight of the evidence. (*Kerr v. Police Board* (1974), 59 Ill. 2d 140, 319 N.E.2d 478; *Fenyes v. State Employees' Retirement System* (1959), 17 Ill. 2d 106, 160 N.E.2d 810.) This review does not include the reweighing of evidence (*West End Savings & Loan Association v. Smith* (1959), 16 Ill. 2d 523, 158 N.E.2d 608; *Flynn v. Board of Fire & Police Commissioners* (1975), 33 Ill. App. 3d 394, 342 N.E.2d 298) or the determination of the credibility of the witnesses. *Hruby v. Board of Fire & Police Commissioners* (1974), 22 Ill. App. 3d 445, 318 N.E.2d 132; *Davenport v. Board of Fire & Police Commissioners* (1972), 2 Ill. App. 3d 864, 868, 278 N.E.2d 212.

## A.

Count I of the complaint alleges that Paramount violated various sections of the private employment agencies act (Ill. Rev. Stat. 1973, ch. 48, pars. 197a through 197o) in numerous ways: (1) section 10 (Ill. Rev. Stat. 1973, ch. 48, par. 197j) and Department Rule 3 in that newspaper ads placed by Paramount did not include information that the ad was placed by a private employment agency and the ads did not include the name and address of the licensee as it appears on the license; (2) section 10 invoices sent to employers did not disclose the licensee's name or that the licensee was a private employment agency; (3) section 5 (Ill. Rev. Stat. 1973, ch. 48, par. 197e) in that applicants were not personally interviewed by the agency before they were sent for an interview with the prospective employer; (4) section 5 in that Paramount did not send referral slips to the prospective employer or to the applicant; and (5) section 12 (Ill. Rev. Stat. 1973, ch. 48, par. 197*l*), in that Paramount violated the prohibition against fraudulent or misleading advertising. Paramount contends that the Department relies only upon a telephone number to connect the ads with Paramount and that the Department has given an unreasonable and unauthorized interpretation to the requirements for personal interviews and referral slips.

The ads in question contain no reference to Paramount, Ivan or Mark Stein and carry no indication that they were placed by an employment agency. The ads do contain, however, phone numbers that were traceable to Ivan. Raymond C. McParthin, a security representative for Illinois Bell Telephone, testified that Illinois Bell records showed that 366-3711 was listed and billed under the name of James G. Ivan, 366-0105 belonged to Paramount, and 771-9060 was listed and billed to Helen Ivan, who was secretary of Paramount and Ivan's wife. Testimony of Benjamin Nix and Theresa Koehler, both of whom operated answering services, identified phone numbers 236-1122, 332-0356 and 332-3456 as answering service numbers leased by a "Mr. Brooks," who gave his home phone number as 366-3711, then as 369-3711. Both of those numbers belonged to Ivan at the

time under a system in which the 366-3711 number could be reached by dialing either 366-3711 or 369-3711.

Sally Elwell testified that she responded to an ad by calling a "Mr. Brooks" at 236-1122. The women who answered told her Mr. Brooks was not in and that he would return her call. Ms. Elwell later received a message that "Mark Stein" had called and that she should call him at 366-0105. Ms. Elwell contacted Stein, who arranged an interview for Ms. Elwell. Stein had referred to Paramount when he answered the phone. Testimony was also made by Andrea Mohr, who responded to an ad by calling 236-1122. A man identifying himself as "Mr. Nieman" returned her call and arranged two interviews for her. Mr. Nieman said he was an employee of Paramount.

■■ Paramount maintains, nonetheless, that its method of operation was approved by the Department's own director. In support of its position, Paramount offered into evidence notices it sent to the Department in which it outlined the procedure it intended to follow. However, the record also contains a letter from the director, addressed to Ivan and bearing a date contemporaneous with the correspondence sent by Ivan. That letter states that the Department would seek an opinion from the Attorney General regarding Paramount's proposed practices. It continues:

> "In the meantime, this department expects you to comply fully with all the provisions of the Act in the areas that are applicable in respect to the correct operation of your licensed agency."

Thus, a factual issue arose as to whether or not there was actual permission and that issue was resolved in favor of the Department. There being evidence to support that conclusion, we will not alter it on review.

■■ Paramount further contends that by interviewing applicants over the phone it satisfied the requirements of section 5 for a "personal interview" maintaining that a face-to-face interview is not required, because a telephone interview can accomplish the same purposes as a face-to-face interview. No definition of a "personal interview" has been offered, either in the form of case law or statute. A consideration of the ordinary meaning of the two words is therefore helpful. Webster's Third New International Dictionary (1966) defines "interview" at page 1183 as "a mutual sight or view," "a meeting face to face," "a private conversation," or "a formal meeting for consultation." The definition carries a clear connotation of a face-to-face encounter. Moreover, if the face-to-face aspect is ignored, there still remains the substance of some form of conversation. If the legislature had intended for any form of interview or conversation to satisfy its intended requirement, it would not have been necessary, considering the definition of "interview," to describe what kind of interview was needed. The word "personal," then, must be given

meaning within the context of the interview, and that meaning should be seen as "in person" rather than "in some contact with the person." This would support the Department's requirement of a face-to-face interview. That Paramount was unquestionably thorough and that applicants placed by Paramount were satisfied therefore has no bearing on whether or not Paramount in fact complied with section 5.

■■ ■ Paramount's argument regarding the referral slips similarly fails. Paramount first maintains that it sent referral slips and provided documentary evidence from its own records. That evidence was refuted by testimony of office managers from three law firms and by several persons placed by Paramount who testified that they received no referral slips prior to the interview. Paramount maintains that requiring referral slips is an excessive burden because they are generally ignored by office personnel who may receive them after the applicant has been interviewed, interviews should not be delayed pending delivery, and that sufficient notice is given by telephone. Section 5 clearly requires that "every applicant, who is sent out for a job or for an interview with a prospective employer" be given a referral slip. No unreasonable obstruction to the hiring process can be seen in the requirement. There was evidence in the form of direct testimony that neither applicants nor prospective employers were given referral slips. Ivan's production of slips for some of the applicants was not sufficient to rebut that evidence.

Accordingly, we conclude that the findings regarding count I are not against the manifest weight of the evidence.

B.

Count II alleged a violation of section 5 in the scheduling of an interview for a Katherine Brinegar without a prior interview with Paramount and in sending her out without a referral slip. It also alleged a violation of section 6 (Ill. Rev. Stat. 1973, ch. 48, par. 197f) and Rule 4 in the solicitation and inducement of an applicant to leave for another job, and a violation of section 10 and Rule 3 in Paramount's offering to make false statements to the prospective employer on Ms. Brinegar's behalf.

■■ Paramount relies primarily on its claim that Ms. Brinegar was impeached by the Department's own witness who testified that Ms. Brinegar was never interviewed or hired by her firm. The testimony, that of Heather Didzerekis, shows only that she had no record of an interview with Ms. Brinegar, which tends to support the claim that no referral slip was sent which would make documentation of the interview possible. Ms. Brinegar testified that Ivan had offered to provide her with false references. Ivan testified to the contrary, again giving rise to a factual issue which was decided against Ivan and Paramount. Paramount, in

effect, is asking this court to redetermine the credibility of the witnesses, which, as we have previously noted, is not appropriate in an administrative review proceeding. The findings with regard to count II therefore will be allowed to stand.

## C.

■▌ Count III again alleged violations of the interview procedure and referral slip requirements of section 5 in the placement of Lynn Svehla. It also alleged a violation of section 10 and Rule 3 in claiming that Ivan urged Ms. Svehla to misrepresent her skills to the prospective employer. Ms. Svehla testified that she was interviewed by Ivan over the phone and was never given a referral slip for her employer interview. She also testified that she had about 1½ years legal experience and 1 year experience with mag cards. Ivan told her to tell the prospective employer that she had about 3 years legal and mag card experience. Notwithstanding Paramount's contention that both Ivan and Ms. Svehla considered her to meet the employer's requirements and that it was thus pointless to misrepresent Ms. Svehla's background, the facts in the record support the hearing officer's conclusion.

## D.

Count IV alleges an arrangement between Paramount, Ivan and Andrea Michna, whereby Paramount would place ads in the Chicago Tribune referring applicants to Ms. Michna, who was then employed by the International Sporting Club (International). Ms. Michna would refer the applicant to Paramount, which would then pay Ms. Michna for each applicant placed. This course of conduct allegedly violated section 197j in that the ads were misleading and did not indicate that an employment agency was involved in the placement process. The actions also allegedly violated Rule 6 which requires a licensee to notify the Department of all phone numbers to be used in connection with its business.

Ms. Michna, called as the Department's witness, testified that she was formerly employed by International, which placed numerous ads in the Chicago Tribune naming her as a contact. She was responsible for drafting and placing the advertisements. Ivan had successfully placed her in a job prior to the one with International, she stated, and her only other contact with him had been to refer her sister to Ivan for a job placement. She also testified that she had never worked for Ivan and was never paid by him.

Lee Franklin, the program director of International, testified that he had no personal knowledge of any relationship between Ivan and Ms. Michna. When he was with another company he had hired Ms. Michna as

a referral from Ivan, who was working under the name of Mark Stein. Franklin had later hired Ms. Michna at International, without using Stein's services. Stein had been paid in cash for the earlier referral, picking up his payment in person, without sending a bill. Ms. Michna had no authority to hire or fire in her position at International, such decisions being the responsibility of Franklin himself.

Franklin testified that he had been visited in October 1974 by a Department inspector who inquired about certain ads placed in the Chicago Tribune. Although the ads listed International's telephone numbers, Franklin said that he had not authorized them. Franklin had a phone conversation with Ms. Michna, in the presence of the investigator, and she admitted to him that she had placed the ads for Stein and was paid $25 per person hired as a result of the ads. Ms. Michna then gave Franklin Stein's number and Franklin called him, still in the presence of the inspector. Franklin stated that he demanded Stein pay $500 for the use of International's phone number and personnel in his newspaper ads. Franklin's testimony regarding the demand for $500 was contradicted by inspector Thomas Madden, who testified that Franklin had demanded that Stein pay him or he would testify against Stein in Department proceedings.

■■ Paramount has raised a hearsay objection regarding Franklin's testimony about the telephone conversations. However, the hearsay rule is not an inflexible one, and Franklin, Ivan and Ms. Michna were all available to testify as to the substance of the conversation. In such an instance, Paramount could not be prejudiced by Franklin's testimony, for the hearsay rule is founded on the necessity and opportunity for cross-examination. (*Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, 367 N.E.2d 1238; *Novicki v. Department of Finance* (1940), 373 Ill. 342, 344, 26 N.E.2d 130, 131.) While Madden should not have been permitted to testify regarding the substance of telephone conversations to which he was not a party, the fact that the actual parties to the conversations did testify prevented Madden's testimony from acting to Paramount's prejudice.

■ In addition to the testimony of Ms. Michna and Franklin, other evidence in the record supports the charges made against Paramount in count IV. Benjamin Nix testified that it was Ms. Michna who had paid bills to Nix' answering service for "Mr. Brooks," who, as discussed in count I, gave Ivan's home phone number as his own. Although there are conflicts in testimony, we conclude that the findings of the hearing officer regarding count IV are not against the manifest weight of the evidence, for the opposite conclusion is not clearly evident. See, *e.g., Wolbach v. Zoning Board of Appeals* (1967), 82 Ill. App. 2d 288, 226 N.E.2d 679.

### E.

Count V alleges violations of section 3 (Ill. Rev. Stat. 1973, ch. 48, par. 197c) regarding the books and records of Paramount in that: (1) there was no fee transaction record and no file of advertisements was maintained in violation of section 3; (2) Ivan admitted off-premises interviewing contrary to section 1 (Ill. Rev. Stat. 1973, ch. 48, par. 197a); (3) applicants' referral slips were not contained in the files, violating section 5; and (4) discriminatory job orders were kept in contravention of sections 1 through 15 (Ill. Rev. Stat. 1973, ch. 48, pars. 197a through 197o) and Rule 1.

Paramount maintains that there was unrefuted testimony that the unannounced inspection which formed the basis for count V was for a purpose other than to check Paramount's books and records and that the inspector declined to look at other records when they were offered. Thomas Madden, the Department's inspector, also testified that he had seen the words "male" and "female" on job order forms, that Ivan told him of the Department's approval for off-premises interviewing, that he saw some advertisement records, was told there were others, but didn't ask to see them. When he asked for Paramount's transaction records, Madden was told by Ivan that they were with his accountant. Paramount maintains that Madden's findings were based on only a few forms, that the former director, Colaizzi, had given Paramount blanket approval for off-premises interviewing, and that the records it maintains fulfill the Department's requirements. To this end, Paramount offered into evidence the transaction book that was not available when the inspector visited.

The charges against Paramount regarding the records are based on the fact that they were unavailable when Madden arrived, contrary to section 3 (Ill. Rev. Stat. 1973, ch. 48, par. 197c), which requires that job orders, applicants' records and fee transaction records "be kept in the agency and shall be open during office hours to inspection by the Department and its duly qualified agents." No accountant's receipt was shown to Madden at the time of the inspection, and none was offered in later proceedings. The fact that the missing records were produced at trial does not necessarily account for their whereabouts at the time of Madden's visit.

■■ With regard to the claim of approval for the off-premises interviews, Paramount's reliance is based on Colaizzi's letter which, as we noted in our consideration of count I, stated that the Department expected Paramount's full compliance with the Act pending a decision of the Attorney General as to the permissibility of such interviews. Finally, Paramount implies that there was no proof of any off-premises transactions. No such proof was necessary, however, because Ivan readily

admitted to such practices. Accordingly, we conclude that the findings based on count V are supported by the evidence.

## F.

Count VI charges Paramount with violating section 5 by failing to conduct a preliminary personal interview of Patricia Kral and then sending her for the employment interview without a referral slip. Ms. Kral's testimony supports the allegations and the findings are therefore upheld.

## G.

Count VII alleges: (1) violations of section 10 and Rule 3 in the placing of advertisements without identifying the licensee or disclosing the licensee's name and address and the fact that the licensee is a private employment agency; (2) violations of Rule 6 in the failure to inform the Department of phone numbers used by Paramount; (3) violations of section 10 and Rule 3 in that advertisements were misleading in the use of pseudonyms, and referred to Ms. Michna at the International Sporting Club phone numbers; and (4) violations of Rule 1 in discriminating references to the caption "Gal Friday" in the ads.

■■ The testimony of Dorothy Childers, who is a self-styled investigator of private employment agency practices, was admitted over Paramount's objections, as was evidence that Paramount had previously been named in another department action. We need not consider whether it was error to admit such evidence, for we conclude that there is sufficient independent evidence to support the allegations in count VII.

As has been noted in our discussion of the other counts in the complaint, the advertisements, which contained no reference to Paramount, were directly linked to the employment agency through phone numbers which were listed and billed to Ivan or his wife. The Department had given no approval to Paramount to use other telephone numbers, and the only other name which Ivan was authorized to use was Mark Stein. Consequently, the admission of Childers' testimony and the evidence of prior Department action against Paramount did not operate to Paramount's prejudice and we therefore uphold the hearing officer's findings based on count VII.

## II.

On cross-appeal, the Department contends that the trial court erred in refusing to dismiss Paramount's administrative review action for failure to pay for the hearing transcript as required by section 12 and in finding that section to be unconstitutional as applied in the instant case.

Section 12 provides in pertinent part:

"* * * The Department shall certify the record of its proceedings if the party commencing the proceedings shall pay to it the cost of preparing and certifying such records, including the recording and transcribing of all testimony introduced in the proceedings. If payment for such costs is not made by the party commencing the proceedings for review within 10 days after notice from the Department of the cost of preparing and certifying the record, the court in which the proceeding is pending, on motion of the Department, shall dismiss the complaint. * * *." (Ill. Rev. Stat. 1973, ch. 48, par. 197*l*.)

After twice notifying Paramount of the cost of preparing the transcript, the Department filed its motion to dismiss on November 13, 1975. Following numerous continuances, including one which specifically allowed Paramount time to pay the costs, the Department renewed its motion on August 10, 1976. On October 25, 1976, the trial court denied the Department's motion to dismiss and found that enforcement of section 12 under the circumstances of the case would be unconstitutional. The transcript was filed in the trial court on November 18, 1975.

■■ ■ Under section 12, the Department is required to certify the record only if the opposing party has paid the costs of preparing the record. We conclude that, by submitting the record to the trial court, the Department waived its right to a mandatory dismissal in accordance with section 12. We will therefore not consider whether the trial court erred in denying the dismissal motion. Nevertheless, we find that the order finding section 12 unconstitutional as applied and relieving Paramount of any obligation to pay for the record was improper, for it went beyond the relief sought by Paramount.

At no time during the hearing on the Department's motion, nor in its memorandum in opposition to the Department's motion, did Paramount request that section 12 be found unconstitutional, and at no time did it attempt to make any showing of the way in which the requirement to pay for the transcript would violate its constitutional rights. Paramount emphatically limited the extent of its own argument to asking the court to protect its right to a full administrative review by refusing to exercise the section 12 dismissal sanction.

Paramount's right to administrative review was preserved when the trial court denied the Department's motion to dismiss. Paramount, however, attempts to avoid the expense of pursuing review, maintaining that the cost is too high because the Department did not sort the chaff out of the record before having it printed. Paramount's contention is without merit. If the Department were to edit the record, it would subject itself to charges that it prejudiced Paramount's case by defining the record on

review. Furthermore, it is illogical to expect the Department to select portions of the hearing record for transcription when the record would necessarily have to be transcribed in its entirety to enable the Department to do so. Moreover, section 12 itself provides that the cost of preparing and certifying the record includes "the recording and transcribing of all testimony introduced in the proceedings." Paramount's rights have been protected, but the protection of those rights did not require a finding of unconstitutionality which was unsupported by the record, and did not require that Paramount be relieved of all obligation to bear the expense of administrative review. We do not, however, express any opinion as to where or to what extent the obligation for such expense should now lie.

Accordingly, the portion of the order of October 20, 1976, denying the Department's motion to dismiss is affirmed, that portion of the order finding section 12 to be unconstitutional is reversed, and the cause is remanded for the purpose of determining the extent of the liability of the parties for costs of producing the record.

## III.

In conclusion, we find that the record amply supports the findings of the hearing officer with regard to counts I thorugh VII. Paramount's arguments are based primarily on the credibility of the witnesses, which has already been resolved against it. Paramount's contentions regarding incompetent testimony are either mistakenly pursued or involve testimony which did not in any way prejudice Paramount. We therefore affirm the judgment entered by the trial court upholding the findings of the hearing officer.

Regarding the Department's cross-appeal from the order of October 20, 1976, we affirm the denial of the dismissal, reverse the finding of unconstitutionality and remand for further proceedings not inconsistent with this opinion.

Judgment affirmed; order affirmed in part, reversed in part and remanded.

SULLIVAN, P. J., and WILSON, J., concur.