JOHN R. GIAMPA, Plaintiff-Appellant, *v.* ILLINOIS CIVIL SERVICE COMMISSION *et al.*, Defendants-Appellees.

First District (1st Division)    No. 79-1718

Opinion filed October 6, 1980.

Julius Lucius Echeles and Caroline Jaffe, both of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Russell C. Grimes, Jr., Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, John R. Giampa, was employed as a Community Services Supervisor I by the Illinois Commission on Delinquency Prevention. After a charge was made against him, plaintiff requested a hearing. Prior to the hearing and over plaintiff's objection, the Illinois Civil Service Commission (Commission) made, and the hearing officer allowed, a motion to add a second charge. After a hearing, the hearing officer made extensive findings and found that both charges had been proved and recommended that plaintiff be discharged. On February 15, 1979, the Commission entered an order adopting the hearing officer's findings holding that the charges had been proved and that such charges warranted discharge of plaintiff from his position. On administrative review, the trial court reversed the Commission as to the first charge, but upheld plaintiff's discharge based on the second charge.

Plaintiff appeals, contending that (1) the second charge and the rule upon which that charge is based are unconstitutionally vague and overbroad; (2) the hearing officer erred in allowing the filing of the second charge; (3) plaintiff was denied a hearing where the hearing officer denied plaintiff's motion for a continuance sought in order to enable him to subpoena Rosa-Linda Blanchard, the complainant-victim, as a witness; (4) the hearing officer improperly admitted in evidence the results of a blood test; (5) the hearing officer improperly considered, along with other evidence, the fact that plaintiff invoked the fifth amendment privilege against self-incrimination even though criminal charges based upon the same alleged occurrences were then pending; and (6) the decision to discharge plaintiff was against the manifest weight of the evidence.

On October 23, 1978, the Director of the Department of Personnel approved the following charges filed with the Commission:

"September 25, 1978, John Giampa was arrested and charged with rape and indecent liberties. October 18, he was indicted by a Cook County Grand Jury on one charge of rape; three charges of indecent liberties with a child; one charge of indecent sexual assault; and one charge of intimidation. Due to the nature of Mr.

Giampa's position and work, which brings him in contact with juveniles, according to Personnel Rule 2-785, discharge is initiated as there is reasonable doubt concerning his suitability for continued Commission [Illinois Commission on Delinquency Prevention] employment."

On October 30, 1978, plaintiff requested a hearing, which was scheduled for November 30, 1978. On November 22, 1978, the Attorney General filed a motion with the Commission to add the following charge:

"Conduct unbecoming a state employee dealing with juveniles in that on September 24, 1978, John Giampa induced, aided, abetted or encouraged a minor in the taking of alcoholic substances or other intoxicating drugs."

Plaintiff's counsel received a copy of the second charge on November 27, 1978. The Director of the Department of Personnel approved the second charge on November 29, 1978.

At the hearing on November 30, 1978, Saddie Schneider, Rosa-Linda Blanchard's godmother, testified that Rosa-Linda, age 13, was in a good frame of mind and normal condition when plaintiff left with her from Schneider's home at about 11:30 a.m. on September 24, 1978, to go shopping. Schneider testified that when plaintiff returned about 3½ hours later, he told Schneider that he could not get Rosa-Linda out of the car and he was worried about the vomit in the car. Schneider then telephoned Rosa-Linda's putative mother, Mrs. Linda Blanchard.

Mrs. Linda Blanchard testified that on September 24, 1978, at about 2:55 p.m., she received a telephone call from Schneider informing her that Rosa-Linda looked like she was dead. Mrs. Linda Blanchard ran over to plaintiff's car, where she found Rosa-Linda "out like a light" and detected the odor of alcohol along with that of vomit.

Dr. Ahuad Abdale and Margaret Gentile, a nurse, both testified that when Rosa-Linda was admitted to the emergency room of Belmont Community Hospital she was in a semiconscious and semilethargic condition.

Floyd H. Johnson testified that he is a technologist employed by Clinical Bio-Tex Laboratories, Inc., which performs quantitative testing of biological samples submitted by Belmont Community Hospital. At 9 p.m., on September 24, 1978, he performed a quantitative blood alcohol test on a blood sample bearing the name of Rosa-Linda Blanchard as well as an erroneous laboratory case number. This was the only blood sample submitted on September 24, 1978, from Belmont Community Hospital for which blood alcohol quantitation was requested. Johnson's analysis revealed that Rosa-Linda's blood contained 92 mg% ethanol. The normal blood content of the human body is zero. Plaintiff objected to the

admission of Johnson's testimony regarding the results of the test and the lab report which was admitted for the purpose of clarification of his testimony.

Plaintiff was called as an adverse witness, but he claimed the fifth amendment privilege against self-incrimination to all questions except those concerning his name, address and social security number. The hearing officer advised plaintiff of his fifth amendment privilege and told plaintiff that his failure to testify would be considered along with the other evidence.

At the conclusion of the hearing, plaintiff requested a continuance in order to subpoena Rosa-Linda Blanchard. The hearing officer denied this request.

On January 30, 1979, the hearing officer issued her decision finding that the charges had been proved and, on February 15, 1979, the Commission adopted the hearing officer's decision. The circuit court upheld plaintiff's discharge based on the second charge and this appeal followed.

Plaintiff contends that the second charge lodged against him and the rule upon which that charge is based are unconstitutionally vague and overbroad. The second charge, set out above, was found by the circuit court to establish a basis for plaintiff's discharge. That charge falls within subsection C of Personnel Rule 2-785, which states:

> "*SUSPENSION OR DISCHARGE RESULTING FROM AR-REST OR CRIMINAL INDICTMENT*: The arrest or criminal indictment of any employee shall not be grounds for suspension or discharge unless the arrest or indictment and facts in support of either made known to the Director:
>
> * * *
>
> C. raised reasonable doubt concerning the employee's suitability for continued State employment in the present assignment or position.
>
> If an employee is not subject to suspension or discharge under this Rule, the Director may, at the request of the employee, place such employee on indefinite leave status without pay, pending a final court determination of innocence or guilt, subject to reimbursement of salary if acquitted. (Amended June 6, 1976.)"

The charges or a complaint in an administrative proceeding need not be drawn with the same precision as required of pleadings in a judicial proceeding. (*Strickland v. Department of Registration & Education* (1978), 60 Ill. App. 3d 1, 376 N.E.2d 255; *Guzell v. Civil Service Com.* (1974), 17 Ill. App. 3d 266, 308 N.E.2d 351.) The charge in an administrative proceeding is required to advise adequately the respondent as to the charges so that he will be able intelligently to prepare his defense.

(*Strickland*; *Hall v. Lyons* (1979), 71 Ill. App. 3d 1023, 389 N.E.2d 1309.) We are also mindful that due process of law requires a definite charge, adequate notice and a full, fair and impartial hearing in administrative as well as judicial proceedings. *Saleson v. Department of Registration & Education* (1968), 95 Ill. App. 2d 104, 237 N.E.2d 822.

■■ The charge related the facts concerning the incident upon which plaintiff's discharge was based. Also, there is no showing that plaintiff was not able intelligently to prepare his defense. Because the second charge and the rule upon which the charge was based were fully adequate to advise plaintiff what he would have to defend against, we reject plaintiff's contention.

Plaintiff's second contention is that the hearing officer erred in allowing the filing of the second charge. We disagree.

■■ Plaintiff did not request a continuance in order to allow time for him to prepare a defense against the second charge. The second charge was based on the same events as the original charge and plaintiff has not demonstrated that he suffered any prejudice because of the amendment. Further, we find it of no consequence that the Director of Personnel's approval of the second charge was not filed with the Commission until after plaintiff had already received a copy of the second charge, because the approval of the second charge was filed with the Commission prior to the commencement of the hearing. See *Battle v. Illinois Civil Service Com.* (1979), 78 Ill. App. 3d 828, 396 N.E.2d 1321 (amendment of charges proper where Director's approval of amended charges was filed with Commission prior to discharge, even though hearing had already commenced).

Plaintiff's third contention is that he was denied a hearing when the hearing officer denied plaintiff's motion for a continuance sought by him in order to enable him to subpoena Rosa-Linda Blanchard. An administrative agency possesses broad discretion as to whether it will allow a motion for a continuance. *Brown v. Air Pollution Control Board* (1967), 37 Ill. 2d 450, 227 N.E.2d 754; *Wegmann v. Department of Registration & Education* (1978), 61 Ill. App. 3d 352, 377 N.E.2d 1297.

■■ Under the circumstances here, we find no abuse of discretion in the denial of plaintiff's request for a continuance. Plaintiff's lack of due diligence is a determining factor in this conclusion. (See *Wegmann.*) Plaintiff never inquired of the assistant Attorney General whether he intended to have Miss Blanchard testify. Plaintiff argues that the motion filed by the assistant Attorney General requesting that "any" testimony from the alleged victim be taken under certain protective conditions supports an inference that the assistant Attorney General would call Miss Blanchard as a witness. However, we do not find that this motion amounted to a representation to plaintiff by the assistant Attorney

General that Miss Blanchard would be a witness. Although plaintiff's counsel had timely notice of the hearing and received the second charge three days before the hearing, he made no attempt to secure the presence of Miss Blanchard. We find that the hearing officer did not abuse her discretion in denying plaintiff's request for a continuance in order to enable plaintiff to subpoena the alleged victim.

Plaintiff's fourth contention is that the hearing officer improperly admitted into evidence the results of the blood test where (a) the "evidentiary chain" was not properly established because there was no evidence linking the sample analyzed to Miss Blanchard, and (b) the tested sample was destroyed before plaintiff's counsel had an opportunity to subject it to an independent analysis.

Initially, we note that the same strict rules of evidence as apply in judicial proceedings do not apply in proceedings before administrative agencies. (*Rauland Division, Zenith Radio Corp. v. Metropolitan Sanitary District* (1971), 2 Ill. App. 3d 35, 275 N.E.2d 756; *Mitchell v. Sackett* (1960), 27 Ill. App. 2d 335, 169 N.E.2d 833.) Unless the failure to observe the technical rules of evidence materially affects the rights of a party and results in substantial injustice to him, such failure is not sufficient reason to set aside an agency's decision. Ill. Rev. Stat. 1977, ch. 110, par. 275(2); *Hah v. Stackler* (1978), 66 Ill. App. 3d 947, 383 N.E.2d 1264; *Lo Piccolo v. Department of Registration & Education* (1972), 5 Ill. App. 3d 1077, 284 N.E.2d 420.

Dr. Abdale testified to the conclusion contained in the lab report that the percentage of ethanol in Miss Blanchard's blood was 92 mg%. The hearing officer allowed a copy of the lab report in evidence for purposes of "clarification." The lab technician who performed part of the testing work in the laboratory testified that he performed the test and determined the percentage to be 92 mg% ethanol. Plaintiff first argues that the foregoing evidence was erroneously admitted because there was no showing that the blood sample on which the lab technician performed the testing was taken from Miss Blanchard.

■■ We find that a sufficient foundation was established to admit testimony concerning the results of the analysis of the blood sample. Johnson testified that he was employed by a laboratory which performs quantitative testing of biological samples submitted by Belmont Community Hospital. At 9 p.m. on September 24, 1978, Johnson arrived at work and proceeded to perform a quantitative blood alcohol test on a sample bearing the name Rosa-Linda Blanchard. Accompanying the blood sample was a note which contained the patient's name, the name of the hospital and the tests to be performed. Johnson testified that this was the only blood sample sent by Belmont Community Hospital on September 24, 1978, requesting blood alcohol quantitation. Absent any suggestion of

substitution or tampering, the evidence concerning the analysis of the blood sample is not made inadmissible for lack of establishing a sufficient foundation by the remote possibility that the sample was not that of Miss Blanchard. See *Ritenour v. Police Board* (1977), 53 Ill. App. 3d 877, 369 N.E.2d 135.

Plaintiff also argues that because the tested sample was destroyed before plaintiff's counsel had an opportunity to subject it to an independent analysis, the hearing officer erred in admitting the blood test into evidence. We disagree. Defendants are not responsible for the internal procedures of the analyzing laboratory over which they had no control.

■■ We find that the hearing officer did not err in admitting the evidence about the blood tests into evidence. Further, even if the hearing officer had erred, the Commission's findings are supported by other substantial evidence. The admission of the evidence regarding the blood test did not materially affect plaintiff's rights and did not result in substantial injustice to him. Ill. Rev. Stat. 1977, ch. 110, par. 275(2); *Lo Piccolo*.

Plaintiff's fifth contention is that the hearing officer improperly considered the fact that plaintiff invoked his fifth amendment privilege against self-incrimination along with the other evidence, even though criminal charges based upon the same alleged occurrence were then pending.

The constitutional guarantee against self-incrimination protects a witness from being forced to give testimony leading to the imposition of criminal penalties, but it does not insulate a witness from every possible detriment resulting from his testimony. (*Douglas v. Daniels* (1978), 64 Ill. App. 3d 1022, 382 N.E.2d 90.) In *Baxter v. Palmigiano* (1976), 425 U.S. 308, 47 L. Ed. 2d 810, 96 S. Ct. 1551, the United States Supreme Court held that the fifth amendment did not forbid the drawing of adverse inferences against a State prison inmate for his failure to testify at a prison disciplinary proceeding. His silence, along with other evidence, may be used to support an adverse decision by a disciplinary board. This holding has not been confined to cases involving prison disciplinary proceedings (see *Arthurs v. Stern* (1st Cir. 1977), 560 F.2d 477 (disciplinary board may draw unfavorable inference from doctor's refusal to testify at disciplinary hearing)), and we find that the principle enunciated by the *Baxter* court is applicable to the instant case.

■■ The hearing officer in the instant case relied on other evidence as well as plaintiff's refusal to testify when ordering him discharged. There is nothing inherently repugnant to due process in requiring plaintiff to choose between giving testimony at the disciplinary hearing and keeping silent, even though giving testimony at the hearing may damage his criminal case and keeping silent will most likely lead to loss of his employment. (See *Arthurs v. Stern* (1st Cir. 1977), 560 F.2d 477.) Because

plaintiff's discharge was not an automatic consequence of his failure to testify at the hearing, plaintiff was not denied his fifth amendment right to be privileged against self-incrimination. We also find that the fact that criminal charges were pending against plaintiff at the time of the hearing does not violate his right to be privileged against self-incrimination. See *Coalition of Black Leadership v. Cianci* (D. R.I. 1979), 480 F. Supp. 1340; *Arthurs v. Stern;* see also *Marcello v. Long Island R. R.* (S.D.N.Y. 1979), 465 F. Supp. 54.

Plaintiff's final contention is that the decision to discharge him from his position of employment was against the manifest weight of the evidence.

In an administrative review action, the findings of the administrative agency are considered *prima facie* correct (Ill. Rev. Stat. 1979, ch. 110, par. 274), and review is limited to whether or not the agency's decision is against the manifest weight of the evidence. (*Kerr v. Police Board* (1974), 59 Ill. 2d 140, 319 N.E.2d 478; *Paramount Consulting Agency, Inc. v. Johnson* (1979), 75 Ill. App. 3d 749, 394 N.E.2d 672.) It is not the function of either the trial court or this court to reweigh the evidence (*West End Savings & Loan Association v. Smith* (1959), 16 Ill. 2d 523, 158 N.E.2d 608; *Paramount Consulting Agency, Inc. v. Johnson*) or to determine the credibility of the witnesses. *Paramount Consulting Agency, Inc. v. Johnson; Hruby v. Board of Fire & Police Commissioners* (1974), 22 Ill. App. 3d 445, 318 N.E.2d 132; *Davenport v. Board of Fire & Police Commissioners* (1972), 2 Ill. App. 3d 864, 278 N.E.2d 212.

■■ The trial court affirmed plaintiff's discharge based on the second charge which alleged he engaged in "[c]onduct unbecoming a state employee dealing with juveniles" in that he "induced, aided, abetted or encouraged a minor in the taking of alcoholic substances or other intoxicating drugs." The evidence presented established that when Rosa-Linda Blanchard left Schneider's home with plaintiff she was in a normal condition, and when she returned 3½ hours later she was in a semilethargic condition and smelled of alcohol and vomit. It is a reasonable inference that plaintiff was responsible for her condition. In addition, we note that plaintiff did not in any way attempt to explain the incident.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, J., concurs.

Mr. JUSTICE McGLOON, dissenting:

For the reasons stated below, I disagree with the majority's holding that Giampa's privilege against self-incrimination was not violated.

The amended charge on which Giampa's discharge was based accused him of inducing, aiding, abetting, and encouraging a minor in the taking of alcoholic substances or other intoxicating drugs. Proof that Giampa induced, aided, abetted, or encouraged Rosa-Linda Blanchard would necessarily include evidence that he affirmatively encouraged her to take or approved of her taking the intoxicating substance.

The evidence presented at the hearing indicated that Giampa left Schneider's home with Rosa-Linda at 11:30 a.m., that Rosa-Linda was then in normal physical condition, that when she returned home 3½ hours later, she was ill, and that her blood contained 92 mg% ethanol. The evidence also revealed that Giampa had taken Rosa-Linda shopping that afternoon. No other evidence regarding the events which transpired while Giampa was with Rosa-Linda on the afternoon in question was produced.

Evidently, the hearing officer based her findings that Giampa induced, aided, and abetted Rosa-Linda on Giampa's silence in the face of specific questions dealing with the events which occurred that day. In essence, Giampa's discharge was based entirely upon his refusal to answer questions which called for incriminating responses.

The majority, relying in part on *Baxter v. Palmigiano* (1976), 425 U.S. 308, 47 L. Ed. 2d 810, 96 S. Ct. 1551, concluded that the hearing officer properly considered Giampa's silence in reaching her findings. In *Baxter*, the United States Supreme Court held that the fifth amendment did not forbid the drawing of adverse inferences against an inmate for failure to testify at a prison disciplinary hearing. In reaching its conclusion, the court enunciated the following principles:

> "[T]he Fifth Amendment 'not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.' *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). Prison disciplinary hearings are not criminal proceedings; but if inmates are compelled in those proceedings to furnish testimonial evidence that might incriminate them in later criminal proceedings, they must be offered 'whatever immunity is required to supplant the privilege' and may not be required to 'waive such immunity.' *Id.*, at 85; *Garrity v. New Jersey*, 385 U.S. 493 (1967); *Gardner v. Broderick*, 392 U.S. 273 (1968); *Sanitation Men v. Sanitation Comm'r*, 392 U.S. 280 (1968)." (425 U.S. 308, 316, 47 L. Ed. 2d 810, 820, 96 S. Ct. 1551, 1557.)

However, these principles were not transgressed in *Baxter* because no criminal proceedings were pending against Palmigiano and the finding of guilt was not an automatic consequence of his silence.

Generally, I agree that adverse inferences may be drawn from silence at disciplinary hearings. However, in this case, Giampa was under indictment for crimes based on the same occurrence for which his discharge was sought. Also, as noted above, Giampa's silence was the only basis for the finding that he induced, aided, and abetted. Hence, I believe that the principles stated in *Baxter* were violated in this case and would therefore hold that the adverse finding was erroneous.

I also disagree with the majority's holding that the hearing officer properly denied Giampa's request for a continuance in order to subpoena Rosa-Linda. The presence of Rosa-Linda was irrelevant as to the initial charges because they were based solely on Giampa's undisputed arrest and indictment. It was not until the amended charge was filed that her testimony became relevant. Defense counsel received notice of this charge only three days before the hearing commenced. The amended charge was not approved until the day before the hearing. Also, counsel's contact with Miss Blanchard was restricted by the court in the simultaneously pending criminal case. Because of the substantial difference in the nature of the charges, the short time period counsel had to prepare for the amended charge and the restrictions placed on counsel by the criminal court, the failure to contact Rosa-Linda cannot be attributed to lack of diligence.

Furthermore, it was reasonable to assume that the Attorney General would call Rosa-Linda, the alleged victim, to prove the amended charge. The Attorney General's request that the testimony of Rosa-Linda be taken in a particular manner rendered the assumption that she could be called as a witness more valid. Upon the failure to call Rosa-Linda defense counsel justifiably could claim surprise. Surprise is a basis for granting a continuance. See *People v. Lott* (1977), 66 Ill. 2d 290, 362 N.E.2d 312.

Admittedly, an administrative body has broad discretion in granting or denying a motion for a continuance. (*Brown v. Air Pollution Control Board* (1967), 37 Ill. 2d 450, 227 N.E.2d 754.) However, its discretion must be exercised judiciously and not arbitrarily, and a refusal to allow a continuance clearly required by the ends of justice is an abuse of discretion warranting reversal. (*Brown.*) Administrative due process requires, in part, adequate notice and a full, fair and impartial hearing. (*Lavin v. Civil Service Com.* (1974), 18 Ill. App. 3d 982, 310 N.E.2d 858, citing *Smith v. Department of Registration & Education* (1952), 412 Ill. 332, 106 N.E.2d 722.) Included within these rights is the opportunity to procure the attendance of a witness vital to the case. *Lindeen v. Illinois State Police Merit Board* (1962), 25 Ill. 2d 349, 185 N.E.2d 206.

Without question, Rosa-Linda was a vital witness in this case. In denying the requested continuance, the hearing officer effectively denied Giampa the right to refute the charges against him, thereby depriving him

of a full, fair hearing. Consequently, I find that the hearing officer abused her discretion.

Abuse of discretion alone does not require reversal of a board's decision; however, when a decision is against the manifest weight of the evidence, reversal is a proper remedy. (*Lindeen v. Illinois State Police Merit Board* (1962), 25 Ill. 2d 349, 185 N.E.2d 206.) As noted previously, the Attorney General presented no evidence indicating that Giampa aided, abetted, induced, or encouraged Rosa-Linda to take an intoxicating substance. Hence, the decision of the board was against the manifest weight of the evidence and the denial of the continuance constituted reversible error.

For the above stated reasons, I would reverse the judgment of the trial court.